1
Douglas Q. Hahn, State Bar No. 257559
dhahn@sycr.com

2
STRADLING YOCCA CARLSON & RAUTH
660 Newport Center Drive, Suite 1600

3
Newport Beach, CA 92660-6422
Tel: 949-725-4000

4

5
Adam G. Price (admitted *pro hac vice*)
aprice@dpelaw.com

6
Victor G. Hardy (admitted *pro hac vice*)
vhardy@dpelaw.com

7
William B. Parrish (admitted *pro hac vice*)
bparrish@dpelaw.com

8
Nicole E. Glauser (admitted *pro hac vice*)
nglauser@dpelaw.com

9
James W. Coutu (admitted *pro hac vice*)
jcoutu@dpelaw.com

10
DINOVO PRICE ELLWANGER & HARDY LLP
7000 North MoPac Expressway, Suite 350

11
Austin, TX 78731
Tel: 512-539-2626

12
Attorneys for Plaintiff

13
Preservation Technologies LLC

14

15

16
**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

17
**SOUTHERN DIVISION**

18
PRESERVATION TECHNOLOGIES
LLC,

19
              Plaintiff,

20
       vs.

21
NETFLIX, INC.; HULU, LLC; DISH
NETWORK CORPORATION; AT&T

22
SERVICES, INC.; COX
COMMUNICATIONS, INC.; DISNEY

23
ONLINE; AMERICAN
BROADCASTING COMPANIES,

24
INC.; YAHOO! INC.; WALMART
STORES, INC.; VUDU, INC.; and

25
ESPN INTERNET VENTURES,

26
              Defendants.

27

CASE NO.: SACV11-01860 DOC
(JPRx)

**SEVENTH AMENDED
CONSOLIDATED COMPLAINT
FOR PATENT INFRINGEMENT**

**JURY DEMANDED**

Complaints Filed: December 2, 2011;
January 3,2012; January 27, 2012;
March 6, 2012;  March 28, 2012;
May 24, 2012; August 24, 2012;
September 14, 2012; October 9, 2012.

28
Stradling Yocca
Carlson & Rauth
LAWYERS
Newport Beach

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1    Plaintiff Preservation Technologies LLC ("Preservation Technologies" or
2  "Plaintiff") alleges as follows:

3

4                              **THE PARTIES**

5    1.    Plaintiff Preservation Technologies is a limited liability company
6  organized and existing under the laws of the State of Delaware, with its principal
7  place of business at 874 Walker Road, Suite C, Dover, Delaware 19904.

8

9    2.    Upon information and belief, Netflix, Inc. ("Netflix") is a corporation
10 organized and existing under the laws of the State of Delaware, with a place of
11 business located at 100 Winchester Circle, Los Gatos, California 95032.  Netflix
12 can be served with process by serving its registered agent for service of process in
13 the State of California, National Registered Agents, Inc., 2875 Michelle Drive,
14 Suite 100, Irvine, California 92606.

15

16   3.    Upon information and belief, Hulu, LLC ("Hulu") is a limited liability
17 company organized and existing under the laws of the State of Delaware, with a
18 place of business located at 12312 W. Olympia Blvd, Los Angeles, California
19 90064.  Hulu can be served with process by serving its registered agent for service
20 of process in the State of Delaware, The Prentice-Hall Corporation System, Inc.,
21 2711 Centerville Road Suite 400, Wilmington, Delaware 19808.

22

23   4.    Upon information and belief, DISH Network Corporation ("DISH") is
24 a corporation organized and existing under the laws of the State of Nevada, with a
25 place of business located at 9601 S. Meridian Boulevard, Englewood, Colorado
26 80112.  DISH can be served with process by serving its registered agent for service

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  of process in the State of Colorado, R. Stanton Dodge, 9601 S. Meridian

2  Boulevard, Englewood, Colorado 80112.

3

4    5.    Upon information and belief, AT&T Services, Inc. ("AT&T") is a

5  corporation organized and existing under the laws of the State of Delaware, with a

6  principal place of business at 1010 N. St. Mary's St., Rm. 9-002, San Antonio TX

7  78215.  AT&T Services, Inc. can be served with process by serving its registered

8  agent for service of process in the State of California, C T Corporation System,

9  818 W. Seventh St., Los Angeles, CA 90017.

10

11    6.    Upon information and belief, Cox Communications, Inc. ("Cox") is a

12  corporation organized and existing under the laws of the State of Delaware, with a

13  place of business located at 1400 Lake Hearn Dr., Mail Stop CP-12, Atlanta,

14  Georgia 30319.  Cox can be served with process by serving its registered agent for

15  service of process in the State of Delaware, Corporation Service Company, 2711

16  Centerville Road, Suite 400, Wilmington, Delaware 19808.

17

18    7.    Upon information and belief, Disney Online  ("Disney") is a

19  corporation organized and existing under the laws of the State of California, with a

20  place of business located at 500 South Buena Vista Street, Burbank, California

21  91521.  Disney can be served with process by serving its registered agent for

22  service of process in the State of California, Marsha L. Reed, 500 South Buena

23  Vista Street, Burbank, California 91521.

24

25    8.    Upon information and belief, American Broadcasting Companies, Inc.

26  ("ABC") is a corporation organized and existing under the laws of the State of

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  Delaware, with a place of business located at 77 West 66th Street, New York, New

2  York 10023-6201.  ABC can be served with process by serving its registered agent

3  for service of process in the State of California, CSC – Lawyers Incorporating

4  Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

5

6       9.    Upon information and belief, Yahoo! Inc. ("Yahoo") is a corporation

7  organized and existing under the laws of the State of Delaware, with a place of

8  business located at 701 First Avenue, Sunnyvale, California 94089.  Yahoo can be

9  served with process by serving its registered agent for service of process in the

10  State of California, C T Corporation System, 818 W. Seventh. Street, Los Angeles,

11  California 90017.

12

13       10.    Upon information and belief, ESPN Internet Ventures ("ESPN" or

14  "Defendant") is a New York General Partnership, with a place of business at 605

15  Third Avenue, New York, New York 10158-0180.

16

17       11.    Upon information and belief, Wal-Mart Stores, Inc. ("Wal-Mart") is a

18  corporation organized and existing under the laws of the State of Delaware, with a

19  place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716.

20  Wal-Mart can be served with process by serving its registered agent for service of

21  process in the State of California, CT Corporation System, 818 W. Seventh Street,

22  Los Angeles, California 90017.

23

24       12.    Upon information and belief, VUDU, Inc. ("VUDU") is a wholly

25  owned subsidiary of Wal-Mart and a corporation organized and existing under the

26  laws of the State of Delaware, with a place of business located at 702 SW 8th

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

1  Street, Bentonville, Arkansas 72716.  VUDU can be served with process by

2  serving its registered agent for service of process in the State of California, Alain

3  Rossmann, 1247 Cowper Street, Palo Alto, California 94301.

4

5      13.    Collectively Netflix, Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo,

6  ESPN, Walmart, and VuDu are "Defendants."

7

8                    **JURISDICTION AND VENUE**

9      14.    This is an action for infringement of United States patents arising

10 under 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject

11 matter jurisdiction of the action under Title 28 U.S.C. §1331 and §1338(a).

12

13     15.    Upon information and belief, personal jurisdiction by this Court over

14 Defendants is proper based upon their residence within the State of California and

15 also Defendants having regularly conducted business, including the acts

16 complained of herein, within the State of California and this judicial district and/or

17 deriving substantial revenue from goods and services provided to individuals in

18 California and in this judicial district.

19

20     16.    Venue properly lies in this district under the provisions of 28 U.S.C.

21 § 1391 because Defendants reside in the district, because Defendants have

22 purposely and repeatedly availed themselves of the privilege of doing business

23 within the district, and because a substantial part of the events giving rise to the

24 claims herein occurred in this district.

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

# THE PATENTS-IN-SUIT

17.     On September 22, 1998, United States Patent No. 5,813,014 ("the
'014 Patent") was duly and legally issued for a "Method and Apparatus for
Management of Multimedia Assets."  The invention disclosed by the '014 Patent is
a generalized solution for management of multimedia assets comprising interfaces
between various components of a multimedia system.  These interfaces provide for
communication between the components to accomplish searching for and
retrieving multimedia assets.  A true and correct copy of the '014 Patent is attached
hereto as Exhibit "A."

18.     On November 3, 1998, United States Patent No. 5,832,499 ("the '499
Patent") was duly and legally issued for a "Digital Library System."  The invention
disclosed by the '499 Patent relates to a digital library system that includes systems
and mechanisms for capturing, managing, and distributing multimedia data.  A true
and correct copy of the '499 Patent is attached hereto as Exhibit "B."

19.     On July 18, 2000, United States Patent No. 6,092,080 ("the '080
Patent") was duly and legally issued for a "Digital Library System."  The invention
disclosed by the '080 Patent relates to a digital library system that includes systems
and mechanisms for capturing, managing, and distributing multimedia data.  A true
and correct copy of the '080 Patent is attached hereto as Exhibit "C."

20.     On March 5, 2002, United States Patent No. 6,353,831 ("the '831
Patent") was duly and legally issued for a "Digital Library System."  The invention
disclosed by the '831 Patent relates to a digital library system that includes systems

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1   and mechanisms for capturing, managing, and distributing multimedia data.  A true

2   and correct copy of the '831 Patent is attached hereto as Exhibit "D."

3

4        21.    On June 3, 2003, United States Patent No. 6,574,638 ("the '638

5   Patent") was duly and legally issued for a "Method and Apparatus for Cataloguing

6   Multimedia Data Using Surveying Data."  The invention disclosed by the '638

7   Patent relates to a method and apparatus in which survey data collected from

8   different survey versions may be retained in a database and used to catalog

9   multimedia data.  A true and correct copy of the '638 Patent is attached hereto as

10  Exhibit "E."

11

12       22.    On March 6, 2001, United States Patent No. 6,199,060 ("the '060

13  Patent") was duly and legally issued for a "Method and Apparatus Management of

14  Multimedia Assets."  The invention disclosed by the '060 Patent relates to a

15  generalized solution for management of multimedia assets comprising interfaces

16  between various components of a multimedia system.  These interfaces provide for

17  communication between the components to accomplish searching for and

18  retrieving multimedia assets.  A true and correct copy of the '060 Patent is attached

19  hereto as Exhibit "F."

20

21       23.    On November 3, 1998, United States Patent No. 5,832,495 ("the '495

22  Patent") was duly and legally issued for a "Method and Apparatus for Cataloguing

23  Multimedia Data."  The invention disclosed by the '495 Patent relates to

24  cataloguing of data such as multimedia data.  It comprises a catalog including one

25  or more catalog elements, each of which has one or more attributes.  These

26  attributes may be used to build one or more indices that can be used to facilitate

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

1  catalog access.  A true and correct copy of the '495 Patent is attached hereto as

2  Exhibit "G."

3

4     24.    On June 17, 2003, United States Patent No. 6,581,071 ("the '071

5  Patent") was duly and legally issued for a "Surveying System and Method."  The

6  invention disclosed by the '071 Patent relates to a method and apparatus in which

7  survey data collected from different survey versions may be retained in a database

8  and used to catalog multimedia data.  A true and correct copy of the '071 Patent is

9  attached hereto as Exhibit "H."

10

11    25.    On February 22, 2001, United States Patent No. 6,477,537 ("the '537

12 Patent") was duly and legally issued for a "Method and Apparatus for Management

13 of Multimedia Assets."  The invention disclosed by the '537 Patent relates to a

14 generalized solution for management of multimedia assets comprising interfaces

15 between various components of a multimedia system.  These interfaces provide for

16 communication between the components to accomplish searching for and

17 retrieving multimedia assets.  A true and correct copy of the '537 Patent is attached

18 hereto as Exhibit "I."  All of the foregoing are collectively referred to herein as the

19 "Patents."

20

21                        **BACKGROUND**

22    26.    The USC Shoah Foundation developed the patented technology.  Its

23 impetus was to gather, catalog and make available for access thousands of video

24 testimonies.  In January 2006, the Survivors of the Shoah Visual History

25 Foundation became part of the Dana and David Dornsife College of Letters, Arts

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1 | and Sciences at the University of Southern California in Los Angeles, where the

2 | testimonies in the Visual History Archive are preserved.

3 |

4 |      Preservation Technologies has all substantial rights and interest to the

5 | Patents-in-Suit, including all rights to recover for all past and future infringements

6 | thereof.

7 | **DEFENDANTS' ACTS**

8 | **Netflix**

9 |      27.    Netflix manufactures, provides, sells, offers for sale, uses, and/or

10 | distributes infringing systems, articles, and methods, as well as provides

11 | computerized instructions that direct, control and/or put into use components that

12 | practice the claimed inventions.  The infringing Netflix systems, articles, and

13 | methods include, but are not limited to, systems, articles, and methods relating to

14 | the cataloguing, organizing, searching, rating, and provisioning of digital

15 | multimedia data, including but not limited to Netflix's internet subscription service

16 | for streaming movies and television shows, and related home and mobile device-

17 | specific applications (the "Accused Systems").  In addition to the foregoing,

18 | Netflix also provides related services, specifications, and instructions for the

19 | installation and operation of such systems and articles to its end-users and

20 | customers.  Netflix acquired knowledge of the Patents through direct notice

21 | communicated to Netflix's counsel of record on April 4, 2012.

22 |

23 | **DISH**

24 |      28.    DISH manufactures, provides, sells, offers for sale, uses, and/or

25 | distributes infringing systems, articles, and methods, as well as provides

26 | computerized instructions that direct, control and/or put into use components that

27 |

28 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  practice the claimed inventions.  The infringing DISH systems, articles, and

2  methods include, but are not limited to, systems, articles, and methods relating to

3  the cataloguing, organizing, searching, rating, and provisioning of digital

4  multimedia data, including but not limited to the foregoing services on Blockbuster

5  On-Demand (www.blockbuster.com/download), DISH Network television, DISH

6  Online, and related home and mobile device-specific applications and associated

7  equipment (the "Accused Systems").  In addition to the foregoing, DISH also

8  provides related services, specifications, and instructions for the installation and

9  operation of such systems and articles to its end-users and customers.  DISH

10  acquired knowledge of the Patents through direct notice communicated to DISH's

11  counsel of record on April 4, 2012.

12

13  **Hulu**

14      29.    Hulu manufactures, provides, sells, offers for sale, uses, and/or

15  distributes infringing systems, articles, and methods, as well as provides

16  computerized instructions that direct, control and/or put into use components that

17  practice the claimed inventions.  The infringing Hulu systems, articles, and

18  methods include, but are not limited to, systems, articles, and methods relating to

19  the cataloguing, organizing, searching, rating, and provisioning of digital

20  multimedia data, including but not limited to the foregoing services on Hulu.com

21  and Hulu Plus, and related home and mobile device-specific applications (the

22  "Accused Systems").  In addition to the foregoing, Hulu also provides related

23  services, specifications, and instructions for the installation and operation of such

24  systems and articles to its end-users and customers.  Hulu acquired knowledge of

25  the Patents through direct notice communicated to Hulu's counsel of record on

26  April 4, 2012.

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

**AT&T**

30.    AT&T manufactures, provides, sells, offers for sale, uses, and/or distributes infringing systems, articles, and methods, as well as provides computerized instructions that direct, control and/or put into use components that practice the claimed inventions.  The infringing AT&T systems, articles, and methods include, but are not limited to, systems, articles, and methods relating to the cataloguing, organizing, searching, rating, and provisioning of digital multimedia data, including but not limited to U-Verse cable and online video services, and AT&T's U-Verse Total Home (multi-room) DVR service that incorporates at least a portion of the UPnP standard, MOCA technology, and the Cable Labs Home Networking Standard, and related home and mobile device-specific applications and associated equipment (the "Accused Systems").  In addition to the foregoing, AT&T also provides related services, specifications, and instructions for the installation and operation of such systems and articles to its end-users and customers.  AT&T acquired knowledge of the '014, '527, and '537 Patents through its own prosecution activities, in which those Patents were cited against its own filings as prior art.  AT&T acquired knowledge of all of the Patents-in-Suit through direct notice communicated to AT&T's counsel of record on April 4, 2012.

**Cox**

31.    Cox manufactures, provides, sells, offers for sale, uses, and/or distributes infringing systems, articles, and methods, as well as provides computerized instructions that direct, control and/or put into use components that practice the claimed inventions.  The infringing Cox systems, articles, and methods include, but are not limited to, systems, articles, and methods relating to the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  cataloguing, organizing, searching, rating, and provisioning of digital multimedia

2  data, including but not limited to Cox's digital cable and TV Online services,

3  Cox's Whole Home (multi-room) DVR service that incorporates at least a portion

4  of the UPnP standard, MOCA technology, and the Cable Labs Home Networking

5  Standard, and related home and mobile device-specific applications and associated

6  equipment (the "Accused Systems").  In addition to the foregoing, Cox also

7  provides related services, specifications, and instructions for the installation and

8  operation of such systems and articles to its end-users and customers.  Cox

9  acquired knowledge of the Patents through direct notice communicated to Cox's

10  counsel of record on April 4, 2012.

11

12  **Disney**

13      32.    Disney manufactures, provides, sells, offers for sale, uses, and/or

14  distributes infringing systems, articles, and methods, as well as provides

15  computerized instructions that direct, control and/or put into use components that

16  practice the claimed inventions.  The infringing Disney systems, articles, and

17  methods include, but are not limited to, systems, articles, and methods relating to

18  the cataloguing, organizing, searching, rating, and provisioning of digital

19  multimedia data, including but not limited to Disney's online video services

20  available at disneymoviesonline.go.com and related home and mobile device-

21  specific applications (the "Accused Systems").  In addition to the foregoing,

22  Disney also provides related services, specifications, and instructions for the

23  installation and operation of such systems and articles to its end-users and

24  customers.  Disney acquired knowledge of the Patents through direct notice

25  communicated to Disney's general counsel on May 11, 2012.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

**ABC**

33.    ABC manufactures, provides, sells, offers for sale, uses, and/or distributes infringing systems, articles, and methods, as well as provides computerized instructions that direct, control and/or put into use components that practice the claimed inventions.  The infringing ABC systems, articles, and methods include, but are not limited to, systems, articles, and methods relating to the cataloguing, organizing, searching, rating, and provisioning of digital multimedia data, including but not limited to ABC's online video services available at abc.com and abc.go.com, and related home and mobile devices-specific applications (the "Accused Systems").  In addition to the foregoing, ABC also provides related services, specifications, and instructions for the installation and operation of such systems and articles to its end-users and customers.  ABC acquired knowledge of the Patents through direct notice communicated to ABC's general counsel on May 11, 2012.

**Yahoo**

34.    Yahoo manufactures, provides, sells, offers for sale, uses, and/or distributes infringing systems, articles, and methods, as well as provides computerized instructions that direct, control and/or put into use components that practice the claimed inventions.  The infringing Yahoo systems, articles, and methods include, but are not limited to, systems, articles, and methods relating to the cataloguing, organizing, searching, rating, and provisioning of digital multimedia data, including but not limited to Yahoo's online video services available at screen.yahoo.com and movies.yahoo.com, and related home and mobile device-specific applications (the "Accused Systems").  In addition to the foregoing, Yahoo also provides related services, specifications, and instructions for

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

LITIOC/2066724v1/102298-0001

1  the installation and operation of such systems and articles to its end-users and

2  customers.  Yahoo acquired knowledge of the Patents through direct notice

3  communicated to Yahoo's general counsel on May 10, 2012.

4

5  **ESPN**

6      35.    ESPN manufactures, provides, sells, offers for sale, uses, and/or

7  distributes infringing systems, articles, and methods, as well as provides

8  computerized instructions that direct, control and/or put into use components that

9  practice the claimed inventions.  The infringing ESPN systems, articles, and

10  methods include, but are not limited to, systems, articles, and methods relating to

11  the cataloguing, organizing, searching, rating, and provisioning of digital

12  multimedia data, , including but not limited to ESPN's internet service for viewing

13  videos (available at http://espn.go.com) and related home and mobile device-

14  specific application (the "Accused Systems").  In addition to the foregoing, ESPN

15  also provides related services, specifications, and instructions for the installation

16  and operation of such systems and articles to its end-users and customers.  ESPN

17  acquired knowledge of the Patents through direct notice communicated to ESPN's

18  general counsel on August 28, 2012.

19

20  **Walmart**

21      36.    Walmart manufactures, provides, sells, offers for sale, uses, and/or

22  distributes infringing systems, articles, and methods, as well as provides

23  computerized instructions that direct, control and/or put into use components that

24  practice the claimed inventions.  The infringing systems, articles, and methods

25  include, but are not limited to, systems, articles, and methods relating to the

26  cataloguing, organizing, searching, rating, and provisioning of digital multimedia

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-13-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1   data, including but not limited to Walmart's internet service for streaming movies,

2   television shows, and other videos—available at the root URL

3   http://www.walmart.com/browse/movies-tv/video-on-demand-by-vudu—and

4   related home and mobile device-specific applications (the "Accused Systems").  In

5   addition to the foregoing, Walmart also provides related services, specifications,

6   and instructions for the installation and operation of such systems and articles to its

7   end-users and customers.  Walmart acquired knowledge of the Patents through

8   direct notice communicated to Walmart's general counsel on August 28, 2012.

9

10   **VuDu**

11   37.   VuDu manufactures, provides, sells, offers for sale, uses, and/or

12   distributes infringing systems, articles, and methods, as well as provides

13   computerized instructions that direct, control and/or put into use components that

14   practice the claimed inventions.  The infringing systems, articles, and methods

15   include, but are not limited to, systems, articles, and methods relating to the

16   cataloguing, organizing, searching, rating, and provisioning of digital multimedia

17   data, including but not limited to VuDu's internet service for streaming movies,

18   television shows, and other videos—available at http://www.vudu.com and the root

19   URL http://www.walmart.com/browse/movies-tv/video-on-demand-by-vudu—and

20   related home and mobile device-specific applications (the "Accused Systems").  In

21   addition to the foregoing, VuDu also provides related services, specifications, and

22   instructions for the installation and operation of such systems and articles to its

23   end-users and customers.  VuDu acquired knowledge of the Patents through direct

24   notice communicated to VuDu's general counsel on August 28, 2012.

25

26

27

28

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

## COUNT 1

### *(Direct and indirect infringement of United States Patent No. 5,813,014)*

38.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if
set forth in their entirety herein.

39.     Preservation Technologies is the owner of all substantial rights and
interest to the '014 Patent with the exclusive right to enforce such Patent against
infringers, and collect damages for all relevant times, including the right to
prosecute this action.

40.     Upon information and belief, Defendants Netflix, Hulu, DISH,
Disney, ABC, Yahoo, ESPN, Walmart, and VuDu without permission of
Preservation Technologies, have been and are presently infringing the '014 Patent,
as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling,
offering for sale, and/or importing systems, articles, and methods infringing one or
more claims of the '014 Patent.  Defendants Netflix, Hulu, DISH, Disney, ABC,
Yahoo, ESPN, Walmart, and VuDu are thus liable for direct infringement of the
'014 Patent pursuant to 35 U.S.C. § 271(a).

41.     Defendants Netflix, Hulu, and DISH had actual knowledge of the '014
Patent at least as of April 4, 2012; Defendants Disney and ABC had actual
knowledge of the '014 Patent at least as of May 11, 2012; Defendant Yahoo had
actual knowledge of the '014 Patent at least as of May 10, 2012; Defendants
ESPN, Walmart, and VuDu had actual knowledge of the '014 Patent at least as of
August 28, 2012.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

42.     Since obtaining knowledge of the '014 Patent as set forth in paragraph 41, Defendants Netflix, Hulu, DISH, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu have indirectly infringed and continue to indirectly infringe the '014 Patent by actively inducing infringement by others of one or more of the claims of the '014 Patent in violation of 35 U.S.C. § 271(b) and contributorily infringing one or more of the claims of the '014 Patent based on others' direct infringement in violation of 35 U.S.C. § 271(c).

43.     Upon information and belief, Defendants Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's end-users and/or customers directly infringe the '014 Patent by using the Accused Systems in violation of 35 U.S.C. § 271(a).

44.     Defendants Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of infringement and contributory infringement has occurred with actual knowledge of the '014 Patent as set forth in paragraph 41.

45.     Defendants Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its action would induce infringement of, the '014 Patent, as demonstrated by, *inter alia*, providing specifications and instructions for the installation and operation of its Accused Systems, including uses that infringe one or more claims of the '014 Patent.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-

LITIOC/2066724v1/102298-0001

46.     On information and belief, Defendants Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's contributory infringement has occurred with knowledge that its Accused Systems are a material part of the invention, and are especially made or adapted for a use that infringes one or more claims of the '014 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

47.     As a result of Defendants Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringement of the '014 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

48.     Upon information and belief, Netflix's, Hulu's, DISH's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

## COUNT 2

### *(Direct infringement of United States Patent No. 5,832,499)*

49.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if set forth in their entirety herein.

50.     Preservation Technologies is the owner of all substantial rights and interest to the '499 Patent with the exclusive right to enforce such Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

51.     Upon information and belief, Defendants Netflix, Hulu, DISH, AT&T, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu without permission of Preservation Technologies, have been and are presently infringing the '499 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling, offering for sale, and/or importing systems, articles, and methods infringing one or more claims of the '499 Patent.  Defendants Netflix, Hulu, DISH, AT&T, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu are thus liable for direct infringement of the '499 Patent pursuant to 35 U.S.C. § 271(a).

52.     As a result of Defendants Netflix's, Hulu's, DISH's, AT&T's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringement of the '499 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

53.     Upon information and belief, Netflix's, Hulu's, DISH's, AT&T's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

## COUNT 3

### (Direct and indirect infringement of United States Patent No. 6,092,080)

54.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if set forth in their entirety herein.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

55.     Preservation Technologies is the owner of all substantial rights and interest to the '080 Patent with the exclusive right to enforce such Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

56.     Upon information and belief, Defendants Netflix, Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu without permission of Preservation Technologies, have been and are presently infringing the '080 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling, offering for sale, and/or importing systems, articles, and methods infringing one or more claims of the '080 Patent.  Defendants Netflix, Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu are thus liable for direct infringement of the '080 Patent pursuant to 35 U.S.C. § 271(a).

57.     Defendants Netflix, Hulu, DISH, AT&T and Cox had actual knowledge of the '080 Patent at least as of April 4, 2012; Defendants Disney and ABC had actual knowledge of the '080 Patent at least as of May 11, 2012; Defendant Yahoo had actual knowledge of the '080 Patent at least as of May 10, 2012; and Defendants ESPN, Walmart, and VuDu had actual knowledge of the '080 Patent at least as of August 28, 2012.

58.     Since obtaining knowledge of the '080 Patent as set forth in paragraph 57, Defendants Netflix, Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu have indirectly infringed and continue to indirectly infringe the '080 Patent by actively inducing infringement by others of one or more of the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

LITIOC/2066724v1/102298-0001

1    claims of the '080 Patent in violation of 35 U.S.C. § 271(b) and contributorily

2    infringing one or more of the claims of the '080 Patent based on others' direct

3    infringement in violation of 35 U.S.C. § 271(c).

4

5        59.    Upon information and belief, Defendants Netflix's, Hulu's, DISH's,

6    AT&T's, Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's end-

7    users and/or customers directly infringe the '080 Patent by using the Accused

8    Systems in violation of 35 U.S.C. § 271(a).

9

10       60.    Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's, Disney's,

11   ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of

12   infringement and contributory infringement has occurred with actual knowledge of

13   the '080 Patent as set forth in paragraph 57.

14

15       61.    Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's, Disney's,

16   ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of

17   infringement has occurred with the specific intent of encouraging others to

18   infringe, or with willful blindness to the fact that its actions would induce

19   infringement of, the '080 Patent, as demonstrated by, *inter alia*, providing

20   specifications and instructions for the installation and operation of its Accused

21   Systems, including uses that infringe one or more claims of the '080 Patent.

22

23       62.    On information and belief, Defendants Netflix's, Hulu's, DISH's,

24   AT&T's, Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's

25   contributory infringement has occurred with knowledge that its Accused Systems

26   are a material part of the invention, and are especially made or adapted for a use

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

1    that infringes one or more claims of the '080 Patent and are not a staple article or

2    commodity of commerce suitable for substantial non-infringing uses.

3

4         63.    As a result of Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's,

5    Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringement of the

6    '080 Patent, Preservation Technologies has suffered monetary damages that are

7    adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no

8    event less than a reasonable royalty.

9

10        64.    Upon information and belief, Netflix's, Hulu's, DISH's, AT&T's,

11   Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringing

12   conduct will continue unless enjoined by this Court, resulting in continuing harm

13   to Plaintiff.

14

15                                **COUNT 4**

16   *(Direct and indirect infringement of United States Patent No. 6,353,831)*

17        65.    Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if

18   set forth in their entirety herein.

19

20        66.    Preservation Technologies is the owner of all substantial rights and

21   interest to the '831 Patent with the exclusive right to enforce such Patent against

22   infringers, and collect damages for all relevant times, including the right to

23   prosecute this action.

24

25        67.    Upon information and belief, Defendants Netflix, Hulu, DISH,

26   AT&T, Cox, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu, without

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  permission of Preservation Technologies, have been and are presently infringing

2  the '831 Patent, as infringement is defined by 35 U.S.C. § 271(a), including

3  through, using, selling, offering for sale, and/or importing systems, articles, and

4  methods infringing one or more claims of the '831 Patent.  Defendants Netflix,

5  Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo, ESPN, Walmart, and VuDu are

6  thus liable for direct infringement of the '831 Patent pursuant to 35 U.S.C.

7  § 271(a).

8

9    68.    Defendants Netflix, Hulu, DISH, AT&T and Cox had actual

10  knowledge of the '831 Patent at least as of April 4, 2012; Defendants Disney and

11  ABC had actual knowledge of the '831 Patent at least as of May 11, 2012;

12  Defendant Yahoo had actual knowledge of the '831 Patent at least as of May 10,

13  2012; Defendants ESPN, Walmart, and VuDu had actual knowledge of the '831

14  Patent as least as of August 28, 2012.

15

16    69.    Since obtaining knowledge of the '831 Patent as set forth in paragraph

17  68, Defendants Netflix, Hulu, DISH, AT&T, Cox, Disney, ABC, Yahoo, ESPN,

18  Walmart, and VuDu have indirectly infringed and continue to indirectly infringe

19  the '831 Patent by actively inducing infringement by others of one or more of the

20  claims of the '831 Patent in violation of 35 U.S.C. § 271(b) and contributorily

21  infringing one or more of the claims of the '831 Patent based on others' direct

22  infringement in violation of 35 U.S.C. § 271(c).

23

24    70.    Upon information and belief, Defendants Netflix's, Hulu's, DISH's,

25  AT&T's, Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's end-

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

1   users and/or customers directly infringe the '831 Patent by using the Accused

2   Systems in violation of 35 U.S.C. § 271(a).

3

4   71.   Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's, Disney's,

5   ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of

6   infringement and contributory infringement has occurred with actual knowledge of

7   the '831 Patent as set forth in paragraph 68.

8

9   72.   Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's, Disney's,

10   ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's active inducement of

11   infringement has occurred with the specific intent of encouraging others to

12   infringe, or with willful blindness to the fact that its actions would induce

13   infringement of, the '831 Patent, as demonstrated by, *inter alia*, providing

14   specifications and instructions for the installation and operation of its Accused

15   Systems, including uses that infringe one or more claims of the '831 Patent.

16

17   73.   On information and belief, Defendants Netflix's, Hulu's, DISH's,

18   AT&T's, Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's

19   contributory infringement has occurred with knowledge that its Accused Systems

20   are a material part of the invention, and are especially made or adapted for a use

21   that infringes one or more claims of the '831 Patent and are not a staple article or

22   commodity of commerce suitable for substantial non-infringing uses.

23

24   74.   As a result of Defendants Netflix's, Hulu's, DISH's, AT&T's, Cox's,

25   Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringement of the

26   '831 Patent, Preservation Technologies has suffered monetary damages that are

27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1  adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no

2  event less than a reasonable royalty.

3

4      75.    Upon information and belief, Netflix's, Hulu's, DISH's, AT&T's,

5  Cox's, Disney's, ABC's, Yahoo's, ESPN's, Walmart's, and VuDu's infringing

6  conduct will continue unless enjoined by this Court, resulting in continuing harm

7  to Plaintiff.

8

9  ## COUNT 5

10  ### *(Direct infringement of United States Patent No. 6,574,638)*

11      76.    Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if

12  set forth in their entirety herein.

13

14      77.    Preservation Technologies is the owner of all substantial rights and

15  interest to the '638 Patent with the exclusive right to enforce such Patent against

16  infringers, and collect damages for all relevant times, including the right to

17  prosecute this action.

18

19      78.    Upon information and belief, Defendants Netflix, Hulu, DISH, and

20  ESPN, without permission of Preservation Technologies, have been and are

21  presently infringing the '638 Patent, as infringement is defined by 35 U.S.C.

22  § 271(a), including through, using, selling, offering for sale, and/or importing

23  systems, articles, and methods infringing one or more claims of the '638 Patent.

24  Defendants Netflix, Hulu, DISH, and ESPN are thus liable for direct infringement

25  of the '638 Patent pursuant to 35 U.S.C. § 271(a).

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-24-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

79.     As a result of Defendants Netflix's, Hulu's, DISH's, and ESPN's infringement of the '638 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

80.     Upon information and belief, Netflix's, Hulu's, DISH's, and ESPN's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

## COUNT 6

### *(Direct and indirect infringement of United States Patent No. 6,199,060)*

81.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if set forth in their entirety herein.

82.     Preservation Technologies is the owner of all substantial rights and interest to the '060 Patent with the exclusive right to enforce such Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

83.     Upon information and belief, Defendants Netflix, DISH, and Cox without permission of Preservation Technologies, have been and are presently infringing the '060 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling, offering for sale, and/or importing systems, articles, and methods infringing one or more claims of the '060 Patent.  Defendants Netflix, DISH, and Cox are thus liable for direct infringement of the '060 Patent pursuant to 35 U.S.C. § 271(a).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-25-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

84.     Defendants Netflix, DISH, and Cox had actual knowledge of the '060 Patent at least as of April 4, 2012.

85.     Since obtaining knowledge of the '060 Patent as set forth in paragraph 84, Defendants Netflix, DISH, and Cox have indirectly infringed and continue to indirectly infringe the '060 Patent by actively inducing infringement by others of one or more of the claims of the '060 Patent in violation of 35 U.S.C. § 271(b) and contributorily infringing one or more of the claims of the '060 Patent based on others' direct infringement in violation of 35 U.S.C. § 271(c).

86.     Upon information and belief, Defendants Netflix's, DISH's, and Cox's end-users and/or customers directly infringe the '060 Patent by using the Accused Systems in violation of 35 U.S.C. § 271(a).

87.     Defendants Netflix's, DISH's, and Cox's active inducement of infringement and contributory infringement has occurred with actual knowledge of the '060 Patent as set forth in paragraph 84.

88.     Defendants Netflix's, DISH's, and Cox's, active inducement of infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of, the '060 Patent, as demonstrated by, *inter alia*, providing specifications and instructions for the installation and operation of its Accused Systems, including uses that infringe one or more claims of the '060 Patent.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

89.     On information and belief, Defendants Netflix's, DISH's, and Cox's contributory infringement has occurred with knowledge that its Accused Systems are a material part of the invention, and are especially made or adapted for a use that infringes one or more claims of the '060 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

90.     As a result of Defendants Netflix's, DISH's, and Cox's infringement of the '060 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

91.     Upon information and belief, Netflix's, DISH's, and Cox's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

## COUNT 7

### *(Direct infringement of United States Patent No. 5,832,495)*

92.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if set forth in their entirety herein.

93.     Preservation Technologies is the owner of all substantial rights and interest to the '495 Patent with the exclusive right to enforce such Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

94.     Upon information and belief, Defendants Netflix, Hulu, DISH, ABC, Yahoo, and ESPN, without permission of Preservation Technologies, have been and are presently infringing the '495 Patent, as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling, offering for sale, and/or importing systems, articles, and methods infringing one or more claims of the '495 Patent.  Defendants Netflix, Hulu, DISH, ABC, Yahoo, and ESPN are thus liable for direct infringement of the '495 Patent pursuant to 35 U.S.C. § 271(a).

95.     As a result of Defendants Netflix's, Hulu's, DISH's, ABC's, Yahoo's, and ESPN's infringement of the '495 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

96.     Upon information and belief, Netflix's, Hulu's, DISH's, ABC's, Yahoo's, and ESPN's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

## COUNT 8

### (Direct and indirect infringement of United States Patent No. 6,581,071)

97.     Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if set forth in their entirety herein.

98.     Preservation Technologies is the owner of all substantial rights and interest to the '071 Patent with the exclusive right to enforce such Patent against infringers, and collect damages for all relevant times, including the right to prosecute this action.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-28-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1      99.    Upon information and belief, Defendant Netflix, without permission

2  of Preservation Technologies, has been and is presently infringing the '071 Patent,

3  as infringement is defined by 35 U.S.C. § 271(a), including through, using, selling,

4  offering for sale, and/or importing systems, articles, and methods infringing one or

5  more claims of the '071 Patent.  Defendant Netflix is thus liable for direct

6  infringement of the '071 Patent pursuant to 35 U.S.C. § 271(a).

7

8      100.   Defendant Netflix had actual knowledge of the '071 Patent at least as

9  of April 4, 2012.

10

11     101.   Since April 4, 2012, Defendant Netflix has indirectly infringed and

12  continues to indirectly infringe the '071 Patent by actively inducing infringement

13  by others of one or more of the claims of the '071 Patent in violation of 35 U.S.C.

14  § 271(b) and contributorily infringing one or more of the claims of the '071 Patent

15  based on others' direct infringement in violation of 35 U.S.C. § 271(c).

16

17     102.   Upon information and belief, Defendant Netflix's end-users and/or

18  customers directly infringe the '071 Patent by using Defendant Netflix's Accused

19  Systems in violation of 35 U.S.C. § 271(a).

20

21     103.   Defendant Netflix's active inducement of infringement and

22  contributory infringement has occurred with actual knowledge of the '071 Patent.

23

24     104.   Defendant Netflix's active inducement of infringement has occurred

25  with the specific intent of encouraging others to infringe, or with willful blindness

26  to the fact that its actions would induce infringement of, the '071 Patent, as

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-29-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1   demonstrated by, *inter alia*, providing specifications and instructions for the

2   installation and operation of its Accused Systems, including uses that infringe one

3   or more claims of the '071 Patent.

4

5        105.   On information and belief, Defendant Netflix's contributory

6   infringement has occurred with knowledge that its Accused Systems are a material

7   part of the invention, and are especially made or adapted for a use that infringes

8   one or more claims of the '071 Patent and are not a staple article or commodity of

9   commerce suitable for substantial non-infringing uses.

10

11       106.   As a result of Defendant Netflix's infringement of the '071 Patent,

12  Preservation Technologies has suffered monetary damages that are adequate to

13  compensate it for the infringement under 35 U.S.C. § 284, but in no event less than

14  a reasonable royalty.

15

16       107.   Upon information and belief, Netflix's infringing conduct will

17  continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

18

19                              **COUNT 9**

20   *(Direct and indirect infringement of United States Patent No. 6,477,537)*

21       108.   Plaintiff repeats and re-alleges the allegations in paragraphs 1-37 as if

22  set forth in their entirety herein.

23

24       109.   Preservation Technologies is the owner of all substantial rights and

25  interest to the '537 Patent with the exclusive right to enforce such Patent against

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-30-

LITIOC/2066724v1/102298-0001

1    infringers, and collect damages for all relevant times, including the right to

2    prosecute this action.

3

4         110.   Upon information and belief, Defendants Netflix, DISH, and Cox,

5    without permission of Preservation Technologies, have been and are presently

6    infringing the '537 Patent, as infringement is defined by 35 U.S.C. § 271(a),

7    including through, using, selling, offering for sale, and/or importing systems,

8    articles, and methods infringing one or more claims of the '537 Patent.  Defendants

9    Netflix, DISH, and Cox are thus liable for direct infringement of the '537 Patent

10   pursuant to 35 U.S.C. § 271(a).

11

12        111.   Defendants Netflix, DISH, and Cox had actual knowledge of the '537

13   Patent at least as of April 4, 2012.

14

15        112.   Since obtaining knowledge of the '537 Patent as set forth in paragraph

16   111, Defendants Netflix, DISH, and Cox have indirectly infringed and continue to

17   indirectly infringe the '537 Patent by actively inducing infringement by others of

18   one or more of the claims of the '537 Patent in violation of 35 U.S.C. § 271(b) and

19   contributorily infringing one or more of the claims of the '537 Patent based on

20   others' direct infringement in violation of 35 U.S.C. § 271(c).

21

22        113.   Upon information and belief, Defendants Netflix's, DISH's, and

23   Cox's end-users and/or customers directly infringe the '537 Patent by using the

24   Accused Systems in violation of 35 U.S.C. § 271(a).

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-31-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

114.    Defendants Netflix's, DISH's, and Cox's active inducement of infringement and contributory infringement has occurred with actual knowledge of the '537 Patent as set forth in paragraph 111.

115.    Defendants Netflix's, DISH's, and Cox's active inducement of infringement has occurred with the specific intent of encouraging others to infringe, or with willful blindness to the fact that its actions would induce infringement of, the '537 Patent, as demonstrated by, *inter alia*, providing specifications and instructions for the installation and operation of its Accused Systems, including uses that infringe one or more claims of the '537 Patent.

116.    On information and belief, Defendants Netflix's, DISH's, and Cox's contributory infringement has occurred with knowledge that its Accused Products are a material part of the invention, and are especially made or adapted for a use that infringes one or more claims of the '537 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing uses.

117.    As a result of Defendants Netflix's, DISH's, and Cox's infringement of the '537 Patent, Preservation Technologies has suffered monetary damages that are adequate to compensate it for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

118.    Upon information and belief, Netflix's, DISH's, and Cox's infringing conduct will continue unless enjoined by this Court, resulting in continuing harm to Plaintiff.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-32-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

## JURY DEMAND

Plaintiff Preservation Technologies hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Preservation Technologies respectfully requests that the Court:

A.    Permanently enjoin each Defendant, its agents, servants, and employees, and all those in privity with each Defendant or in active concert and participation with any of the Defendants, from engaging in acts of infringement of the Patents-in-Suit;

B.    Award Plaintiff Preservation Technologies past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendants of the Patents-in-Suit in accordance with 35 U.S.C. § 284;

C.    Adjudge at least Defendants AT&T as a willful infringer and award all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found or assessed;

D.    Declare this case exceptional pursuant to 35 U.S.C. § 285; and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-33-

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

1    E.    Award Plaintiff Preservation Technologies its costs, disbursements,

2  attorneys' fees, and such further and additional relief as is deemed appropriate by

3  this Court.

4

5                                    Respectfully submitted,

6

Dated:  March 22, 2013            STRADLING YOCCA CARLSON &
7                                    RAUTH

8

9                            By: _____

10                                   Douglas Q. Hahn

11                                     -   and

12

13                                   Adam G. Price
                                     Victor G. Hardy
14                                   William B. Parrish
                                     Nicole E. Glauser
15                                   James W. Coutu

16

17                                   Attorney for Plaintiff
                                     Preservation Technologies LLC

18

19

20

21

22

23

24

25

26

27

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
28

SEVENTH AMENDED CONSOLIDATED COMPLAINT FOR PATENT INFRINGEMENT

LITIOC/2066724v1/102298-0001

DOUGLAS Q. HAHN, State Bar No. 257559
dhahn@sycr.com
**STRADLING YOCCA CARLSON & RAUTH**
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Phone: 949-725-4000

ADAM G. PRICE (admitted pro hac vice)
aprice@dpelaw.com
VICTOR G. HARDY (admitted pro hac vice)
vhardy@dpelaw.com
NICOLE E. GLAUSER (admitted pro hac vice)
nglauser@dpelaw.com
WILLIAM B. PARRISH (admitted pro hac vice)
bparrish@dpelaw.com
JAMES W. COUTU (admitted pro hac vice)
jcoutu@dpelaw.com
**DINOVO PRICE ELLWANGER & HARDY LLP**
7000 North MoPac Expressway, Suite 350
Austin, TX 78731
Phone: 512-539-2626

Attorneys for Plaintiff
PRESERVATION TECHNOLOGIES LLC

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| PRESERVATION TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>NETFLIX, INC.; HULU, LLC; DISH NETWORK CORPORATION; AT&T SERVICES, INC.; COX COMMUNICATIONS, INC.; DISNEY ONLINE; AMERICAN BROADCASTING COMPANIES; INC.; YAHOO! INC.; WALMART STORES, INC.; VUDU, INC.; and ESPN INTERNET VENTURES,<br><br>Defendants. | CASE NO.: SACV11-01860 DOC (JPRx)<br><br>**CERTIFICATE OF SERVICE**<br><br>Complaints Filed: December 2, 2011; January 3, 2012; January 27, 2012; March 6, 2012; March 28, 2012; May 24, 2012; August 24, 2012; and March 22, 2013 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-

CERTIFICATE OF SERVICE

LITIOC/2063029v1/102298-0001

1 │ I certify that on March 22, 2013, the following document:

2 │ ## SEVENTH AMENDED COMPLAINT

3 │         was served on all parties or their counsel of record, by electronic
4 │ transmission to the persons at the electronic email addresses indicated below:

5 │ Lisa K. Nguyen
  │ Email: lisa.nguyen@lw.com
  │ Latham & Watkins LLP
6 │ 140 Scott Drive
  │ Menlo Park, California 94025
7 │ Tel: 650-328-4600
  │ Fax: 650-463-2600
8 │

9 │ Richard G. Frenkel
  │ Email: rick.frenkel@lw.com
  │ Ron E. Shulman
10 │ Email: ron.shulman@lw.com
  │ S. Giriraj Pathmanaban
11 │ Email: giri.pathmanaban@lw.com
  │ Latham & Watkins
12 │ 140 Scott Dr
  │ Menlo Park, California 94025-1008
13 │ Tel: 650-328-4600
  │ Fax: 650-463-2600
14 │

15 │ Ryan R. Owens
  │ Email: ryan.owens@lw.com
  │ Latham & Watkins LLP
16 │ 650 Town Center Drive 20th Floor
  │ Costa Mesa, California 92626
17 │ Tel: 714-540-1235
  │ Fax: 714-755-8290
18 │

19 │ *Attorneys for Defendant Hulu, LLC*

20 │ Alyssa Margaret Caridis
  │ Email: acaridis@orrick.com
  │ Orrick Herrington and Sutcliffe LLP
21 │ 777 South Figueroa Street Suite 3200
  │ Los Angeles, California 90017
22 │ Tel: 213-612-2020
  │ Fax: 213-612-2499
23 │

24 │ *Attorneys for Defendant Dish Network Corporation*

25 │ Darren E. Donnelly
  │ Email: ddonnelly@fenwick.com
  │ J. David Hadden
26 │ Email: dhadden@fenwick.com
  │ Phillip John Haack
27 │ Email: phaack@fenwick.com
  │ Virginia K. DeMarchi

28 │

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

CERTIFICATE OF SERVICE

LITIOC/2063029v1/102298-0001

Email: vdemarchi@fenwick.com
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, California 94041-2008
Tel: 650-988-8500
Fax: 650-938-5200

*Attorneys for Netflix, Inc.*

Bart L. Kessel
Email: bart.kessel@tuckerellis.com
Tucker Ellis & West LLP
515 South Flower Street 42nd Floor
Los Angeles, California 90071-2223
Tel: 213-430-3400
Fax: 213-430-3409

Bryant C. Boren , Jr
Email: bryant.c.boren@bakerbotts.com
Kevin E. Cadwell
Email: kevin.cadwell@bakerbotts.com
Baker Botts LLP
1001 Page Mill Road
Building One
Palo Alto, California 94304
Tel: 650-739-7500
Fax: 650-739-7699

Ali Dhanani
Email: ali.dhanani@bakerbotts.com
Lisa Catherine Kelly
Email: lisa.kelly@bakerbotts.com
Roger J. Fulghum
Email: roger.fulghum@bakerbotts.com
William P. Rothwell
Email: william.rothwell@bakerbotts.com
Baker Botts LLP
910 Louisiana Street
Houston, Texas 77002-4995
Tel: 713-229-1108
Fax: 713-229-2808

*Attorneys for Defendant AT&T Services, Inc.*

Jana Contreras
Email: jxc@cpdb.com
Coblentz Patch Duffy and Bass LLP
One Ferry Building Suite 200
San Francisco, California 94111
Tel: 415-391-4800
Fax: 415-989-1663

Richard W. Goldstucker
Email: Rgoldstucker@kilpatricktownsend.com

-3-

CERTIFICATE OF SERVICE

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2063029v1/102298-0001

1  Vaibhav P. Kadaba
   Email: Wkadaba@kilpatricktownsend.com
2  Audra A. Dial
   Email: adial@kilpatricktownsend.com
3  Mitchell G. Stockwell
   Email: mstockwell@ kilpatricktownsend.com
4  Kilpatrick Townsend and Stockton LLP
   1100 Peachtree Street NE Suite 2800
5  Atlanta, Georgia 30309-4528
   Tel: 404-815-6073
6  Fax: 404-541-3301

7  Richard R. Patch
   Email: rrp@cpdb.com
8  Coblentz Patch Duffy and Bass LLP
   One Ferry Building Suite 200
9  San Francisco, California 94111
   Tel: 415-391-4800
10 Fax: 415-989-0663

11 *Attorneys for Cox Communications, Inc.*

12 Evan Finkel
   Email: evan.finkel@pillsburylaw.com
13 Michael S. Horikawa
   Email: michael.horikawa@pillsburylaw.com
14 Richard H. Zaitlen
   Email: richard.zaitlen@pillsburylaw.com
15 Pillsbury Winthrop Shaw Pittman LLP
   725 South Figueroa Street Suite 2800
16 Los Angeles, California 90017-5406
   Tel: 213-488-7100
17 Fax: 213-226-4058

18 Peter K. Hahn
   Email: peter.hahn@pillsburylaw.com
19 Pillsbury Winthrop Shaw Pittman LLP
   501 West Broadway Suite 1100
20 San Diego, California 92101-3575
   Tel: 619-544-3108
21 Fax: 619-236-1995

22 *Attorneys for American Broadcasting Companies, Inc.,*
   *Disney Online, and ESPN Internet Ventures*

23 Andrew N. Thomases
   Email: andrew.thomases@skadden.com
24 James J. Elacqua
   Email: james.elacqua@skadden.com
25 Matthew S. Paik
   Email: matthew.paik@skadden
26 Michael D. Saunders
   Email: michael.saunders@skadden.com
27 Skadden Arps Slate Meagher and Flom LLP
   525 University Avenue Suite 1100
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

CERTIFICATE OF SERVICE

LITIOC/2063029v1/102298-0001

1   Palo Alto, California 943041
    Tel: 650-470-4500
2   Fax: 650-470-4570

3   Jason D. Russell
    Email: jrussell@skadden.com
4   Skadden Arps Slate Meagher and Flom LLP
    300 South Grand Avenue Suite 3400
5   Los Angeles, California 90071-3144
    Tel: 213-687-5000
6   Fax: 213-687-5600

7   *Attorneys for Yahoo! Inc.*

8   Laura L. Chapman
    Email: lchapman@sheppardmullin.com
9   Shannon S. King
    Email: sking@sheppardmullin.com
10  Sheppard Mullin Richter and Hampton LLP
    4 Embarcadero Center 17th Floor
11  San Francisco, California 94111
    Tel: 415-434-9100
12  Fax: 415-434-3947

13  George L. Kanabe
    Email: gkanabe@sheppardmullin.com
14  Sheppard Mullin Richter and Hampton LLP
    379 Lytton Avenue
15  Palo Alto, California 94301
    Tel: 650-815-2688
16  Fax: 650-815-4677

17  Deepali Brahmbhatt
    Email: dbrahmbhatt@sheppardmullin.com
18  Sheppard Mullin Richter and Hampton LLP
    379 Lytton Avenue
19  Palo Alto, CA 94301
    Tel: 650-815-2604
20  Fax: 650-815-2601

21  *Attorneys for Defendants*
    *Walmart Stores, Inc. and VuDu, Inc.*

22

23

24  Date:  March 22, 2013          */s/* Veronica Garcia
                                    Veronica Garcia
25                                  VERONICA GARCIA

26

27

28

-5-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

LITIOC/2063029v1/102298-0001

# EXHIBIT A

|||||||||||||||||||||||||||||||||||||||||||||||||||
US005813014A

## United States Patent [19]

Gustman

[11] Patent Number: **5,813,014**

[45] Date of Patent: **Sep. 22, 1998**

[54] METHOD AND APPARATUS FOR
MANAGEMENT OF MULTIMEDIA ASSETS

[75] Inventor: Samuel Gustman, Santa Monica, Calif.

[73] Assignee: Survivors of the Shoah Visual History
Foundation, Los Angeles, Calif.

[21] Appl. No.: 678,727

[22] Filed: Jul. 10, 1996

[51] Int. Cl.⁶ .............................................. G06F 17/30
[52] U.S. Cl. ..................... 707/103; 707/3; 707/103;
707/104; 707/102; 707/1; 707/4
[58] Field of Search .......................... 395/615, 284,
395/285, 806, 701, 601–10, 610–619, 620–29;
434/500, 308; 707/1, 3, 103, 4, 102, 104

[56]                 References Cited

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,192,999 | 3/1993 | Oraczyk et al. | 348/552 |
| 5,241,671 | 8/1993 | Reed | 707/104 |
| 5,283,638 | 2/1994 | Enberg et al. | 348/141 |
| 5,283,819 | 2/1994 | Glick et al. | 379/93.01 |
| 5,297,249 | 3/1994 | Bernstein et al. | 345/856 |
| 5,307,456 | 4/1994 | MacKay | 345/328 |
| 5,402,492 | 3/1995 | Robison et al. | 381/310 |
| 5,404,506 | 4/1995 | Fujisawa | 707/4 |
| 5,428,730 | 6/1995 | Baker et al. | 345/335 |
| 5,434,592 | 7/1995 | Dinwiddie, Jr. et al. | 345/133 |
| 5,436,898 | 7/1995 | Bowen et al. | 370/352 |
| 5,450,581 | 9/1995 | Bergen et al. | 707/9 |
| 5,530,852 | 6/1995 | Meske, Jr. et al. | 395/200.36 |
| 5,604,900 | 3/1997 | Daelder et al. | 707/102 |
| 5,630,121 | 5/1997 | Braden-Harder | 707/102 |
| 5,649,185 | 7/1997 | Antognini et al. | 707/9 |
| 5,649,186 | 7/1997 | Ferguson | 707/10 |

### OTHER PUBLICATIONS

Musei Vaticani, Internet, (http://www.virtual.co.il/orgs/orgs/
archival/bookint.htm), pp. 1–10, Dec. 8, 1994.
The Judaica Archival Project, Internet, (http://www.virtual-
.co.il.orgs/archiva/bookint.htm), pp. 1–11, Apr. 1996.

Primary Examiner—Wayne Amsbury
Assistant Examiner—Diane D. Mizrahi
Attorney, Agent, or Firm—Hecker & Harriman

[57]                 ABSTRACT

The invention is a generalized solution for management of
multimedia assets. Generalized interfaces are used between
a browser component, indexing server, archive server, ter-
tiary storage manager, and method player components. The
generalized interface defines a communication protocol that
can be used by any browser, indexing server, archive server,
tertiary storage manager, or method player component.
Thus, system components supplied by multiple vendors can
be interconnected to form a multimedia system that com-
municates using the generalized interfaces of the invention.
A browser component can accept input such as search
requests and display multimedia data. An indexing server
component includes a data catalogue that catalogues multi-
media data. The catalogue can be used to identify catalogue
elements associated with data that can satisfy a search
request. A search mechanism is used to identify the desired
multimedia data. A search mechanism can create additional
catalogues that are a subset of the catalogue provided on the
indexing server. An archive server identifies a tertiary stor-
age manager that manages the store containing the multi-
media data. The tertiary storage manager retrieves the cor-
responding multimedia data from its store and sends it to a
method play which plays it in a display region of the
browser. The invention retains the content and results of a
search such that it is only necessary to perform a search
once. Search elements are used to store the content of a
search, i.e., search criteria. A segment element is used to
store the results of a search.

34 Claims, 24 Drawing Sheets



FIG. 1A



FIG. 1B



FIG. 1C



FIG. 1D



FIG. 1E



FIG. 1F



FIG. 2



FIG. 3

U.S. Patent          Sep. 22, 1998          Sheet 6 of 24          5,813,014



*FIG. 4A*



FIG. 4B



*FIG. 4C*

U.S. Patent          Sep. 22, 1998          Sheet 9 of 24          5,813,014



318

Browser

502

Data

510    File
512    Segment
514    Phrase
516    Keyword                    314
518    Keyword Hierarchy
520    Person
522    Thesaural Keyword
524    Type
526    Type Hierarchy

Request

504

Indexing
Server

316

*FIG. 5*

U.S. Patent          Sep. 22, 1998          Sheet 10 of 24          5,813,014



FIG. 6

U.S. Patent       Sep. 22, 1998       Sheet 11 of 24       5,813,014



FIG. 7A

U.S. Patent        Sep. 22, 1998      Sheet 12 of 24        5,813,014



FIG. 7B



FIG. 8A



FIG. 8B



FIG. 8C



FIG. 9



FIG. 10A



FIG. 10B



FIG. 11A

**U.S. Patent**          Sep. 22, 1998          Sheet 20 of 24          **5,813,014**



FIG. 11B



FIG. 12



FIG. 13A

U.S. Patent          Sep. 22, 1998          Sheet 23 of 24          5,813,014



FIG. 13B



*FIG. 14*

5,813,014

1

## METHOD AND APPARATUS FOR MANAGEMENT OF MULTIMEDIA ASSETS

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The invention relates to a system of managing multimedia assets.

2. Background

Increasingly, computer systems are being used to present multimedia material. Such material is usually in the form of text, graphics, video, animation, and sound. Two or more of these data types are usually combined to form the multimedia data presented by the computer system. A computer system that is used to present multimedia material is called a multimedia system.

A multimedia system should include components that allow input, information retrieval, and display. FIG. 1A provides an illustration of components for a multimedia system. Client 110 includes an interface capability to accept user input. The user input can specify criteria for identifying multimedia data. Method player 102 converts the media data from its storage version to a playback version for use by client 110.

Index server 108, archive server 106, and tertiary storage 104 provide storage and retrieval capabilities. Index server 108 is used to store and retrieve text data. Information entered in the user interface can be used to retrieve textual information stored by index server 108. The user input might identify a video segment using a title that is associated with the video segment using index server 108, for example. The multimedia data is stored on a physical storage device. A retrieval mechanism is provided to retrieve data from a physical storage device. Archive server 106 locates the multimedia data wherever it is stored and interfaces with tertiary storage manager 105 to access the media data.

Current multimedia systems attempt to provide some or all of the components described in FIG. 1A. However, the components provided by these systems are merged to form a single component thereby making it impossible to separate the merged components into the discrete components described in FIG. 1A. This architecture is disadvantageous for at least two reasons: 1) there is no ability to replace a less capable component with another, more capable component; 2) it forces each system to run on a single hardware platform.

Each system provides vendor-specific implementations in which at least one of the vendor-specific components used in these systems renders the system less viable as a solution for multimedia applications. Since, the services are merged into a single server, there is no ability to remove a less viable component and substitute a more capable component in its place. For example, a vendor may offer a multimedia system that includes its premiere DBMS product as an index server along with a less capable archive server or client. All of the components are interlinked such that it is impossible to substitute another archive server or client for the existing archive server and client. The following provides a brief summary of some existing multimedia systems.

FIG. 1B illustrates one multimedia system having an intermedia server, client and index server combined as a single component that runs on one, monolithic hardware platform. The system is not portable to another hardware platform. It runs on a single hardware platform (i.e., platform 112, a Hewlett Packard platform). The system includes intermedia server 118, index server 116, and client 114.

2

Client 114 is used to make a multimedia request to intermedia server 118. Intermedia server 118 queries index server 116 for information to locate the requested data. Intermedia server 118 uses the data returned from index server 116 to request the data from its archive server and tertiary storage management subsystems.

The archive server and tertiary storage management subsystems are integrated in intermedia server 118. Client and method player 114 and index server 116 are interconnected with intermedia server 118 to form a single component. The interconnections are hardwired such that it is impossible to replace one of the existing components. Another aspect of the design of this system results in the inability to substitute another component. Client 114 has a built-in method player functionality. Thus, the system expects the client component to include a method player. Yet, most client components that are offered by vendors do not include a method player. Therefore, it is impossible to use a different client or method player component with intermedia server 118.

A multimedia system having a hub is illustrated in FIG. 1C. Such a system is provided by Oracle. The hub is provided by media server 130. The system runs on a specific hardware platform (hardware platform 138, an N-Cube hardware platform) and is not portable to other platforms. Media server 130 acts as a hub that uses a proprietary interface to communicate with its other services. Components with which media server 130 can communicate are method player 122, tertiary storage manager 124, and client 120 (via lines 134, 132, and 136, respectively). These components are merged into a single component thus making it impossible to replace a component. The component formed by media server 130, method player 122, tertiary storage manager 124, index server 128, archive server 126 and client 120 must run on a single hardware platform, platform 138. Further, while index server 128 is a powerful database management system, client 120, archive server 126, method player 122 and tertiary storage 124 offer weak solutions.

A system having an index server, tertiary storage manager, and archive server is illustrated in FIG. 1D. Such a system is provided by IBM. The system offers index server 148 (e.g., IBM's DB2 or Oracle's DBMS), archive server 146, and tertiary storage manager 144 in an integrated system that runs on mainframe 140. Mainframe 140 is an IBM SP2 hardware platform comprised of two RS6000 machines. Mainframe 140 is comprised of processing units 144 in which components (e.g., index server 148) can run. Tertiary storage 144 is connected to one of processing units 144. A request for multimedia content from a client is processed by index server 148. Index server 148 provides selection information that identifies the content which is retrieved from tertiary storage 144. The system is built to run in a mainframe environment using IBM hardware. Further, the system does not include a client or method player. Index server 148, tertiary storage manager 144 and archive server 146 are combined as a single component such that it is impossible to replace one or more of them.

A system having a kernel and data blades that interface with the kernel is illustrated in FIG. 1E. Such a system is provided by Informix. As illustrated below, the system includes kernel 170 that acts as a hub. Kernel 170 is supplemented by a plurality of data blades 160A-160H. Data blades 160A-160H communicate with the kernel using a proprietary interface. A data blade is a complex data type that is defined using a programming language such as "C". Each data blade (e.g., 160A-160H) is attached to kernel 170 and integrated into data dictionary 172. Data blades

5,813,014

3

160A–160H can then be used over a file system. Kernel 170 includes a index. Thus, another component must communicate with this index via a proprietary interface provided by a data blade (e.g., data blades 160A-160H). Data blades 160H, 160B, and 160D provide a proprietary interface to method player 162, tertiary storage manager 164, and archive server 166, respectively. The components provided by this system are merged to form a single component that use a proprietary interface to communicate. The component combination runs on a single hardware platform 174. Data dictionary 172 can become large and cumbersome. In addition, a fault that occurs in one data blade that is included in data dictionary 172 causes a fault for the entire system. This system construction is not fault tolerant and is unacceptable for a production environment.

A pre-packaged system having interconnected system components with hardwired, proprietary interconnections is illustrated in FIG. 1B. Such a system is provided by Cinebase. System 178 includes a component formed by method player 182, tertiary storage manager 184, archive server 186, index server 188, and client 190. There is no clear definition between components. Further, there are no clearly defined lines of communication between the components. Component interfaces are hardwired, and it is therefore impossible to substitute components that can communicate using the existing connections for the existing components. There is no ability to split the component into discrete components such that replacement component can be substituted for one of the existing components. Further, it is impossible to split the combined component into separate components that can run on multiple hardware platforms. The combined component offers a weak solution. The archive server is fast and efficient. Several tertiary storage managers are also provided. The method players are capable. However, the client and index server components provide a weak solution.

None of these systems illustrated in FIGS. 1B–1F provide a general cataloguing capability that can catalogue any type of multimedia data. In addition, none of the systems provided a viable multimedia system solution. That is, none of the systems provide viable options for each of the multimedia components identified in FIG. 1A. All of the systems merge the components identified in FIG. 1A into a single component that makes it impossible to replace one of the components. Further, by combining the components into a single component, each system must run on a single hardware platform. Further, there is no vendor-independent interface available to integrate components from different vendors to construct a optimum multimedia system.

A number of prior art patents that describe software and/or hardware systems are provided below. These systems do not provide a general cataloguing capability or interfaces to interconnect the multimedia system components identified in FIG. 1A.

A computer system having a television circuit that is capable of receiving television signals and forwarding these signals to the computer system's audio and video subsystems is described in U.S. Pat. No. 5,192,999 (Graczyk et al., issued on Mar. 9, 1993) U.S. Pat. No. 5,283,638 (Engberg et al., issued Feb. 1, 1994), and U.S. Pat. No. 5,283,819 (Glick et al., issued Feb. 1, 1994). Video signals are received for display on the computer system's monitor. Audio signals are output using the computer system's speaker(s). A remote control device is used to control the television circuit within the computer system. A computer system having the television circuit can be used in combination with a data/fax/voice modem circuit for telephonic transmission of television signals for teleconferencing purposes.

4

A service for managing hypertext/hypermedia links is described in U.S. Pat. No. 5,297,249, Bernstein et al., issued on Mar. 22, 1994. A Link Manager Service (LMS) component provides a universal End User Interface (EUI) including menus and dialog boxes that can be called by an application program when a link, or marker, is selected by an application user. The LMS accesses a database that contains information about markers and their associated "presenters" (e.g., application or program). In addition, the LMS includes a viewer capability for viewing and maintaining existing links and creating new links. The LMS is used at runtime to generate menus and dialog boxes and manage the hypertext/hypermedia links.

A system that interconnects audio-video equipment such as video tape record or video production switcher using one or more "AV LANs" in U.S. Pat. No. 5,307,456, Mackay, issued on Apr. 26, 1994. Generic device commands are communicated over an AV LAN to a device translator. The device translator translates the generic command into a device-specific command. The AV LANs are interconnected using bridges. The AV LANs can further be used to interconnect workstations, minicomputers, mainframes and personal computers. The workstations can be used to display information about the resources attached to an AV LAN.

A controller apparatus for use with a computer system that provides programmed volume control of multiple analog input signals such as CD-ROM, telephony, MIDI, PCM, FM, and microphone in U.S. Pat. No. 5,402,499, Robison et al., issued on Mar. 28, 1995. Additionally, the controller can sum multiple inputs and produce multiple audio outputs. The controller provides telephony support such that it receives voice, DTMF and caller ID signals and sends telephonic audio signals.

A multimedia system that provides a multimedia device control program (MMDCP) that interfaces with a multimedia application program (MMAP) and a multimedia presentation manager (MMPM) in OS/2 in U.S. Pat. No. 5,428, 730, Baker et al., issued on Jun. 27, 1995. The MMDCP provides a standardized user interface. Because many of the control functions are performed by the MMDCP, a MMAP can be simplified. The MMDCP creates an instances of a control panel for use with a multimedia device. A control panel instance includes UI widgets (e.g., buttons) that allow a user to control the associated device via the control panel instance and the device driver.

An expansion unit to implement multimedia capabilities on an existing computer system (e.g., IBM PS/2) in U.S. Pat. No. 5,434,592, Dinwiddie, Jr. et al., issued on Jul. 18, 1995. The expansion unit is connected to the computer system via an expansion slot and to the computer system's monitor. The expansion slot controls the video presentation displayed on the monitor.

A multimedia networking (MMNB), multimedia network controller (MMNC) and protocol for transmitting isochronous and packet data between a backbone or wide area network and multiple local area network configurations in U.S. Pat. No. 5,436,898, Bowen et al., issued on Jul. 25, 1995. The MMNC allocates isochronous channels and packet channels to users over the MMNB taking into account the time delay requirements of various data types (e.g., voice, moving images, graphics, or text). The MMNB and MMNC is for use with multimedia applications that require a varying mix of isochronous data and packet data transfers.

SUMMARY OF THE INVENTION

The invention is a generalized solution for management of multimedia assets. Generalized interfaces are used between

5,813,014

| 5 | 6 |

**5**

a browser component, indexing server, archive server, tertiary storage manager, and method player components. The generalized interface defines a communication protocol that can be used by any browser, indexing server, archive server, tertiary storage manager, or method player component. Thus, system components supplied by multiple vendors can be interconnected to form a multimedia system that communicates using the generalized interfaces of the invention.

The browser component can accept input such as search requests and display multimedia data. Search requests are processed by the browser. The indexing server component includes a data catalogue that catalogues multimedia data. The catalogue can be used to identify multimedia data that can satisfy a search request entered using the browser component's user interface. Search mechanisms provided by the browser send requests to the indexing server to query the catalogues and obtain attribute information associated with the catalogue. A search mechanism can create additional catalogues that are a subset of the catalogue provided on the indexing server.

The indexing server's multimedia catalogue includes one or more catalogue elements which can be a complex multimedia asset. A complex multimedia asset can consist of one or more attribute elements. An attribute element is an attribute that can have attributes. A catalogue element is associated with a portion of multimedia data (e.g., one or more frames of video data). The result of a search operation performed by the browser identifies a set of catalogue elements that can satisfy a search request. Each catalogue element has an associated identifier (ID) (e.g., an integer ID) that uniquely identifies the catalogue element. A set of IDs that represent the set of catalogue elements identified in a search operation are sent to the archive server component for retrieval of the associated multimedia data.

The invention retains the content and results of a search such that it is only necessary to perform a search once. Thereafter, the results of the search can be retrieved without performing the search. Search elements are used to store the content of a search, i.e., search criteria. Search elements include a query and a query element. Query element instances contain the search criteria. A query instance identifies a particular query. A query instance can contain one or more query element instances.

A segment element is used to store the results of a search. A segment element is a multimedia asset. Thus, for example, when a set of catalogue elements is identified from a search operation, a segment element is instantiated. An attribute element of the segment element contains each catalogue element identified in the search operation. A relationship is formed between the segment element and a query instance.

When a search request is entered via the browser's user interface, the query element instances associated with a query instance are examined to determine whether the current search is a reoccurrence of a previous search. If so, the relationship formed between the query instance and the segment instance is used to retrieve the segment that contains the catalogue elements identified in the search operation performed for the query instance. Each catalogue element contained in the segment can then be retrieved and sent to the archive server. The archive server identifies the tertiary storage manager that manages the store containing the multimedia data. The tertiary storage manager retrieves the corresponding multimedia data from its store and sends it to the method play which plays it in a display region of the browser.

Multiple types of catalogue elements can be used with the invention. Preferably, however, one type of catalogue ele-

**6**

ment that is referred to as a phrase is used in the invention. A phrase is associated with a portion of multimedia data. A phrase has a plurality of attributes some of which are attribute elements (i.e., an attribute that has associated attributes). The attribute elements that are attributes of a phrase include keyword, person, image, video (e.g., documentary footage), proposed person, and proposed keyword.

To locate multimedia data associated with a phrase, the archive server component retains information for each phrase in the catalogue such as the ID and a pointer to the physical storage location of the data associated with the phrase. When the archive server receives a set of phrase IDs, it uses the physical storage pointer associated with each phrase to locate the multimedia data. A phrase object is created to retain the multimedia data associated with a phrase. Multimedia data retrieved from permanent storage into phrase object instances.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1A provides an illustration of components for a multimedia system.

FIGS. 1B–1F illustrate pre-packaged multimedia systems having interconnected system components with hardwired, proprietary interconnections.

FIG. 2 provides an example of a general purpose computer to be used with the present invention.

FIG. 3 illustrates an embodiment of the invention having generalized interfaces between system components.

FIG. 4A provides an example of elements in the indexing template and their attributes according to an embodiment of the invention.

FIG. 4B illustrates relationships formed between the elements identified in FIG. 4A according to an embodiment of the invention.

FIG. 4C provides an illustration of instances of keyword 410 and a plurality of associated label attributes according to an embodiment of the invention.

FIG. 5 provides an overview of an interface between a browser component and an indexing server component according to an embodiment of the invention.

FIG. 6 provides a process flow for handling search and display operations according to an embodiment of the invention.

FIGS. 7A–7B provide a process flow for processing a search request according to an embodiment of the invention.

FIGS. 8A–8B provide a type and keyword search process flow according to an embodiment of the invention.

FIG. 8C provides a process flow for identifying instances of phrase 406 that are associated with instances of keyword 410 contained in a search set created by a search operation according to an embodiment of the invention.

FIG. 9 provides a person information search process flow according to an embodiment of the invention.

FIGS. 10A–10B provide a person search process flow according to an embodiment of the invention.

FIGS. 11A–11B illustrate search elements, relationships, and attributes used to process and retain search requests according to an embodiment of the invention.

FIG. 12 illustrates use of the phrase element to access multimedia data in accordance with an embodiment of the invention.

FIGS. 13A–13B provide a process flow for handling a play command invocation received from a browser according to an embodiment of the invention.

5,813,014

7

FIG. 14 provides an example of asset management objects
according to an embodiment of the invention.

## DETAILED DESCRIPTION OF THE INVENTION

A method and apparatus for managing multimedia assets
is described. In the following description, numerous specific
details are set forth in order to provide a more thorough
description of the present invention. It will be apparent,
however, to one skilled in the art, that the present invention
may be practiced without these specific details. In other
instances, well-known features have not been described in
detail so as not to obscure the invention.

An embodiment of the invention can be implemented as
computer software in the form of computer readable pro-
gram code executed on a general purpose computer such as
illustrated in FIG. 2. A keyboard 210 and mouse 211 are
coupled to a bi-directional system bus 218. The keyboard
and mouse are for introducing user input to the computer
system and communicating that user input to central pro-
cessing unit (CPU) 213. Other suitable input devices may be
used in addition to, or in place of, the mouse 211 and
keyboard 210. I/O (input/output) unit 219 coupled to
bi-directional system bus 218 represents such I/O elements
as a printer, network communications card, modem, A/V
(audio/video) I/O, etc.

The computer system of FIG. 2 also includes a video
memory 214, main memory 215 and mass storage 212, all
coupled to bi-directional system bus 218 along with key-
board 210, mouse 211 and CPU 213. The mass storage 212
may include both fixed and removable media, such as
magnetic, optical or magnetic optical storage systems or any
other available mass storage technology. Bus 218 may
contain, for example, thirty-two address lines for addressing
video memory 214 or main memory 215. The system bus
218 also includes, for example, a 32-bit data bus for trans-
ferring data between and among the components, such as
CPU 213, main memory 215, video memory 214 and mass
storage 212. Alternatively, multiplex data/address lines may
be used instead of separate data and address lines.

In one embodiment of the invention, the CPU 213 is a
microprocessor manufactured by Motorola, such as the
680X0 processor or a microprocessor manufactured by Intel,
such as the 80X86, or Pentium processor, or a SPARC
microprocessor from Sun Microsystems. However, any
other suitable microprocessor or microcomputer may be
utilized. Main memory 215 is comprised of dynamic random
access memory (DRAM). Video memory 214 is a dual-
ported video random access memory. One port of the video
memory 214 is coupled to video amplifier 216. The video
amplifier 216 is used to drive the cathode ray tube (CRT)
raster monitor 217. Video amplifier 216 is well known in the
art and may be implemented by any suitable apparatus. This
circuitry converts pixel data stored in video memory 214 to
a raster signal suitable for use by monitor 217. Monitor 217
is a type of monitor suitable for displaying graphic images.

The computer system described above is for purposes of
example only. An embodiment of the invention may be
implemented in any type of computer system or program-
ming or processing environment.

The invention implements a generalized interface for
interconnecting system components of a multimedia system.
Thus, it is possible to integrate components from different
systems or vendors to design an optimal multimedia system.
FIG. 3 illustrates an embodiment of the invention having
generalized interfaces between system components.

8

Browser 318 includes a user interface that accepts input
from a user and displays multimedia data. Browser 318
formulates requests based on user-specified criteria for
transmittal to indexing server 316. Indexing server 316
includes a mechanism for identifying stored multimedia data
based on the request sent by browser 318. Archive server
306 and tertiary storage manager 304 retrieves the stored
multimedia data identified by indexing server 316. Method
player 302 converts the stored multimedia data into a form
that can be played on browser 318.

Interfaces are used between the system components to
facilitate inter-component communication. Interface 314
facilitates communication between browser 318 and index-
ing server 316, for example. Interfaces 312 and 310 facilitate
communication between browser 318 and archive server
306, and browser 318 and method player 302, respectively.
Preferably, interfaces 310, 312, and 314 are software inter-
faces such as an application program interface (API).

Interfaces 310, 312, and 314 provide a clearly-defined
communication mechanism that can be used to send and
receive information and initiate another component's opera-
tions. That is, interface 310, 312, and 314 establish a
protocol that can be used by the system components.
Further, a substitute component can adopt the protocols
provided by interfaces 310, 312, or 314 to communicate
with another component. Browser 318, method player 302,
and/or indexing server 316 can therefore be any vendor-
supplied or custom-built component.

Browser 318 accepts a request from a user via its user
interface, requests the identity of multimedia data from
indexing server 316 via interface 314, and transmits the
identity of the multimedia data received from indexing
server 316 to archive server 306 via interface 312. Tertiary
storage manager 304 can consist of one or more instances
each of which can manage a tertiary storage device. Such a
device is a tape robot mass storage device manufactured by
E-Mass, for example. Archive server 306 identifies the
instance of tertiary storage manager 304 that manages the
multimedia data. Tertiary storage manager 304 retrieves the
multimedia data from the storage device and transmits the
data to method player 302. Method player 302 converts the
multimedia data into a form suitable for display and trans-
mits it to browser 318 via interface 310. Multimedia data can
be transmitted between browser 318 and method player 302
based on play control commands (e.g., fast forward, reverse,
fast reverse, etc.) sent from browser 318 to method player
302 via interface 310. Preferably, an Moving Pictures Expert
Group (MPEG) board such as that manufactured by Optivi-
sion is used to play the multimedia data on browser 318.

Indexing Server

The indexing server catalogues data such as multimedia
data. Preferably, the indexing server includes a Database
Management System (DBMS). A data manipulation lan-
guage (DML) such as Structured Query Language (SQL)
can be used to facilitate storage and retrieval operations
invoked on a catalogue and its attributes. A detailed discus-
sion of a catalogue for multimedia data is provided in a
co-pending U.S. Patent Application entitled "Method and
Apparatus for Cataloging Multimedia Data", Ser. No.
08/680,504 filed on Jul. 3, 1996 and incorporated herein by
reference. The following provides a short discussion of a
multimedia catalogs and the attributes and attribute ele-
ments associated with a catalogue.

A catalogue is a collection of one or more catalogue
elements. An index is used to access a catalogue. An element
of a catalogue has one or more attributes. An attribute
provides information that can be used to search for, answer

5,813,014

9

questions about, and navigate through a catalogue. An attribute of a catalogue element can be an element that has attributes. A catalogue element attribute that is an element is referred to as an attribute element. Attribute elements and attributes are used to build an index that can be used to facilitate catalogue access. Within a catalogue, smaller catalogues can be created by, for example, querying and user designation.

Catalogue and Attribute Elements

The multimedia data catalogue used in the invention preferably consists of one catalogue element that is referred to as a phrase. A phrase is associated with a portion of multimedia data. A phrase has a plurality of attributes some of which are attribute elements. The attribute elements that are attributes of a phrase include keyword, person, image, video (e.g., documentary footage), proposed person, and proposed keyword. The keyword, person, image, proposed person and proposed keyword attribute elements can have attributes that are also attribute elements. For example, attribute elements that are attributes of the keyword attribute element include thesaural keyword, thesaural person, keyword, and type. An index is built on the attributes and attribute elements. The index can be used to navigate through the catalogue (e.g., search for phrases).

FIG. 4A provides an example of catalogue and attribute elements and their attributes according to an embodiment of the invention. Segment 404 is a container element. It can contain other elements. For example, segment 404 can contain one or more instances of phrase 406. In the invention, input data is decomposed into one or more pieces, or fragments. An instance of phrase 406 is associated with each input data fragment. Phrase 406 is a catalogue element. Phrase 406 has one or more attributes and/or attribute elements on which an index is built. The index can be used to navigate through the catalogue.

An attribute of phrase 406 is keyword 410. An instance of phrase 406 can be associated with one or more instances of keyword 410. Keyword 410 further defines aspects of an input data fragment. Preferably, an attribute of keyword 410 identifies content, or substance, for an input data fragment. The content or substance identified by keyword 410 is preferably expressed as a single word. However, content or substance can be expressed using multiple words.

To illustrate, the input data can be a videotape. The videotape is, for example, that of an interview conducted with a survivor of the Holocaust. The interview is broken down into the interviewee's pre-war, war-time, and post-war experiences. The interviewee's pre-war experience can be broken down into topics. A pre-war topic might be the interviewee's personal life, for example. Each topic can be broken down into sub-topics. In the example of the interviewee's personal life, a sub-topic might be the interviewee's relationship with family members, experiences at school, etc. Each sub-topic contains an information item. To further illustrate using the current example, an information item might be home, brother, sister, teacher, etc. In this example, the topic of the interviewee's personal life becomes an instance of segment 404. The interviewee's relationship with family members and experiences at school become instances of phrase 406. The words home, brother, sister, and teacher become instances of keyword 410. The words home, brother, sister and teacher provide information regarding the content or substance of an input data fragment.

An instance of keyword 410 can be associated with one or more instances of thesaural keyword 412. An instance of thesaural keyword 412 is an instantiation of an instance of keyword 410. Thesaural keyword 412 specifies a value for

10

label for its associated instance of keyword 410. Thesaural keyword 412 can be one or more words. Thesaural keyword 412 can be used, for example, to specify a value for an instance of keyword 410 in a particular language. Multiple instances of thesaural keyword 412 can be used to express the value of an instance of keyword 410 in multiple languages. Alternative expressions for the value of an instance of keyword 410 can be retained by instances of thesaural keyword 412 as well. Thus, the content or substance of an input data fragment can be expressed in multiple languages with a plurality of alternative expressions in each language. A preference can be associated with an instance of thesaural keyword 412 to identify it as a preferred alternative in a given language.

FIG. 4C provides an illustration of instances of keyword 410 and a plurality of associated label attributes according to an embodiment of the invention. A grid is displayed with axes 486 and 488. Instances of keyword 410 are displayed along a vertical axis, axis 488. A horizontal axis, axis 486 contains examples of languages in which a label associated to an instance of keyword 410 can be represented. Instances of thesaural keyword 412 are depicted at the intersections of these two axes.

Each instance of thesaural keyword 412 is an instantiation for an associated instance of keyword 410. Each instance of thesaural keyword 412 contains a label that can be used as the label for an instance of keyword 410. For example, thesaural keywords 490A–490D, 491A–491E, 492A–492B, and 493A–493B are instantiations of Keyword Instance One. Similarly, thesaural keywords 494A–494B, 495A–495B, 496A–496C, 497A–497B are instantiations of Keyword Instance Two.

An instance of thesaural keyword 412 can be an instantiation of an instance of keyword 410 in a particular language. For example, thesaural keywords 491A–491B are English instantiations of Keyword Instance One. Thesaural keywords 491A–491B provide alternate instantiations for Keyword Instance One. That is, each contains a English-language label for Keyword Instance One. Thus, Keyword Instance One can be associated with a different English-language label based on which instance of thesaural keywords 491A–491B is used to supply the label for Keyword Instance One. Similarly, Keyword Instance is associated with English-language alternatives contained in thesaural keywords 495A–495B.

Thus, within a language, an instance of keyword 410 can have alternate instantiations of thesaural keyword 412. An instance of keyword 410 can also have alternate instantiations of thesaural keyword 412 across multiple languages as exemplified in FIG. 4B. Alternate instantiations for Keyword Instance One exist in French (e.g., thesaural keywords 490A–490D), German (e.g., thesaural keywords 492A–492B), and Russian (e.g., thesaural keywords 493A–493B), for example. Similarly, Keyword Instance Two has alternative instantiations in French (e.g., thesaural keywords 494A–494B), German (e.g., thesaural keywords 494A–494C), Russian (e.g., thesaural keywords 497A–497B).

A preferred alternate instantiation of an instance of keyword 410 can be identified in each of the languages in which the keyword instance is represented. Thus, for example, thesaural keyword instance 490C can be identified as the preferred instantiation of Keyword Instance One for the French language. Similarly, thesaural keyword instances 491B, 492A, and 493B can be the preferred English, German, and Russian (respectively) instantiations for Keyword Instance One. Thesaural keyword instances 494A,

5,813,014

11

495B, 496C, and 497A can be the preferred French, English, German, and Russian instances (respectively) for Keyword Instance Two.

Referring to FIG. 4A, type 416 is associated with keyword 410. Type 416 provides attribute information for keyword 410. Type 416 can be used to include instances of keyword 410 in a classification or category. In other words, an instance of keyword 410 is an instantiation of an instance of type 416. For example, an instance of keyword 410 having an attribute of "Ford Bronco" could be associated with a type instance having an attribute of "car". Another instance of keyword 410 having an attribute of "Mustang" can also be associated with the same instance of type 416. Both instances of keyword 410 are instances of a car. One or more instances of type 416 can be associated with an instance of keyword 410. In the preferred embodiment, a hierarchy is established for instances of type 416. An instance of type 416 can be a parent to or a child of another other instances of type 416. An instance of keyword 410 that is associated with an instance of type 416 is also associated with the hierarchy of the instance of type 416.

Other attribute elements that can be associated with an input data fragment via phrase 406 include person 418, and image 420. Person 418 identifies an individual associated with an input data fragment. In the previous example, a personal life experience may contain a reference to a person. An instance of person 418 can be used to identify the reference. Person information 426 provides attribute information for an instance of person 418. An instance of image 420 is used for data such as a still photograph that is referenced in the input data fragment.

In the preferred embodiment of the invention, some elements, such as keyword 410 and person 418, must be approved before becoming actual instances. Prior to approval, the instances are considered to be proposed instances. For example, proposed keyword 414 and proposed person 424 are attribute elements used to identify instances of keyword 410 and person 418 that have not yet been approved as actual instances. Proposed instances are reviewed and a determination is made whether to transform the proposed attribute element into an actual attribute element or to otherwise dispose of the proposed attribute element.

Person information 426 is an attribute element associated with person 418. A "one-to-one" relationship (relationship 436) exists between person information 426 and person 418. Person information 426 contains attributes for person 418. The attributes of person 418 contain information for a person having an instance of person 418.

Events can also be associated with input data. Each event becomes an instance of event 408. As previously described, input data can be decomposed into input data fragments each of which is associated with an instance of phrase 406. Input data can also be decomposed into input data fragments that are associated with instances of event 408. A type attribute is associated with event 408. Examples of an event type in the preferred embodiment include a segment, phrase, break between tapes, quality assurance details, facts, and miscellaneous (or other). An event can be used to access the associated input data fragment. An instance of event 408 can be used to access an input data fragment. For example, an instance of event 408 of type phrase can be used to locate the input data fragment associated with an instance of phrase 406.

Another example of an event type is a quality assurance event. In the preferred embodiment of the invention, a quality assurance mechanism can be used to monitor the

12

quality of the input data and provide feedback. Quality assurance events are used to mark the input data. An event can mark a positive, negative, or neutral quality assurance event. For example, video input data is being collected in multiple interviews. Each interview can be reviewed to identify parts of the interview process that are noteworthy. Where, for example, an interviewer does not follow-up with an interviewee to obtain additional details, a negative quality assurance event can be created. A positive event can be similarly created. An event that is neither positive nor negative (i.e., informational or neutral) can also be created. A report of quality assurance events can be generated and used to provide feedback to the persons involved in collecting the input data.

Relationships of Elements

In the preferred embodiment, catalogue and attribute elements are interrelated. Relationships are formed between two or more elements using the invention. FIG. 4B illustrates relationships formed between the elements identified in FIG. 4A according to an embodiment of the invention. A "many" relationship is signified using a double arrow. A "one" relationship is identified using a single arrow. Relationship 428, for example, is a "many-to-many" relationship. That is, one or more instances of segment 404 can be related to many instances of phrase 406. Alternatively stated, segment 404 contains one or more instances of phrase 406. One instance of phrase 406 can be related to multiple instances of segment 404. That is, an instance of phrase 406 is contained within one or more instances of segment 404. As illustrated by relationship 446, one or more instances of type 416 can be related to other instances of type 416.

A "many-to-many" relationship (relationship 430) exists between phrase 406 and proposed keyword 414, keyword 410, image/video 420, proposed person 424 and person 418. An instance of phrase 406 can be related to a set of proposed keywords, a set of keywords, a set of images and/or video, a set of proposed persons, and a set of persons, each set having zero or more members. Further, an instance of proposed keyword 414, keyword 410, image 420, proposed person 424 or person 418 can be related to more than one instance of phrase 406.

Relationship 438 illustrates a "many-to-many" relationship between keyword 410 and thesaurus keyword 412. An instance of keyword 410 can be associated with one or more instances of thesaurus keyword 412. The same instance of thesaurus keyword 412 can be associated with one or more instances of keyword 410.

As previously stated, instances of type 416 can be interrelated with other instances of type 416 via a type hierarchy. Relationship 444 identifies an instance of type 416 as a parent or child of another instance of type 416. Similarly, the instances of keyword 410 are interrelated via a keyword hierarchy. Keyword 410 can be related to other instances of keyword 410 via relationship 442. Relationship 442 identifies an instance of keyword 410 as a parent or child of another instance of keyword 410. Relationship 444 relates keyword 410 and type 416. That is, an instance of keyword 410 is related to an instance of type 416. Conversely, an instance of type 416 can be associated with multiple instances of keyword 410.

Further, an instance of keyword 410 can be related to many instances of type 416 via relationships 442 and 446. That is, an instance of keyword 410 has a type that is associated with an instance of type 416. In addition, the instance of keyword 410 inherits the types associated with the children of its associated instance of type 416.

Person 418 and person information 426 have a "one-to-one" relationship via relationship 428. Person 418 and

5,813,014

13

thesaural person 422 are related via relationship 434. Person
418 can be associated with multiple instances of thesaural
person 422. An instance of thesaural person 422 can be
related to multiple instances of person 418 via relationship
434.

Segment 404 is a container element. That is, as illustrated
by relationship 428, segment 404 can contain multiple
instances of phrase 406. Segment 404 is defined by the set
of elements that it contains. For example, segment 404 is, for
example, a chapter segment, a testimony segment, or a
general segment. Instances of phrase 406 can be grouped in
the order in which they occur in the input data in a chapter
segment. As a testimony segment, segment 404 contains a
grouping of instances of 404 associated with the input data.
For example, a testimony segment can contain all instances
of segment 404 that are associated with a videotaped inter-
view. Relationship 450 illustrates the relationship between
instances of segment 404 (i.e., a testimony segment) that act
as a container for other instances of segment 404. A general
segment contains a set of instances of phrase 406 that are not
necessarily related to particular input data. A general seg-
ment can be a collection of phrases that meet a certain
criteria. For example, a general segment can contain
instances of phrase 406 that are related to an instance of
keyword 410 having a value of "teacher".

Segment 404 therefore identifies a group of catalogue
elements (e.g., phrase 406. An instance of segment 404 can
identify all catalogue element instances. Other instances of
segment 404 can identify a subset of catalogue elements.
Thus, for example, an instance of segment 404 can identify
all instances of phrase 406 or a some subset of all of the
instances of phrase 406. The set including all instances of
phrase 406 is a catalogue. A smaller catalogue that contain
a subset of all instances of phrase 406 is also a catalogue.
Within a catalogue, a smaller catalogue can be created by,
for example, a query operation or user designation.

A set of catalogue elements can be identified by querying
the attribute elements, for example. A query operation can be
performed on the attribute elements to examine other
attribute elements associated with a catalogue element. A
query operation identifies a set of catalogue elements (e.g.,
instances of phrase 406) that satisfy the criteria specified in
the query. A set of catalogue elements identified in a query
are grouped in an instance of segment 404. A user can also
specify a collection of phrases 406 that can be grouped in an
instance of segment 404.

Attributes

FIG. 4A provides examples of attributes for catalogue and
attribute elements according to an embodiment of the inven-
tion. Segment 404 contains an identifier (ID), a descriptive
phrase, and a set of phrases, for example. The phrases related
to an instance of segment 404 are included in the segment
instance's set of phrases. A set is formed by creating
relationships between the elements. FIG. 4B illustrates
examples of the relationships that exist between elements in
an embodiment of the invention. The relationships that form
a set can be implemented using any of the known techniques
known in the art. For example, the relationships can be
implemented in a programming language using pointers. In
a relational database management system, for example, the
relationships can be formed using relations and primary and
foreign keys.

Referring to FIG. 4A, phrase 406 includes an input data
ID (e.g., identifies the input data from which the phrase was
generated), an ID, a descriptive phrase, In/Out timecodes
(i.e., a corresponding location within the input data), a set of
keywords, images, persons, proposed keywords, and pro-

14

posed persons. Keyword 410 includes an ID, and sets of
types, thesaural keywords, child keywords and parent key-
words. The child and parent keyword set form relationships
for the keyword hierarchy. The set of thesaural keywords
related to keyword 410 contain keyword values or labels for
keyword instance.

Person 418 includes an ID, a primary name, an
occupation, date of birth, and a set of person information.
Person information 426 contains a person ID for the asso-
ciated instance of person 418. Person information 426
contains one or more attributes for the associated instance of
person 418. The attribute information can vary depending on
the multimedia information being catalogued. For example,
the catalogued multimedia data, may consist of interviews
with individuals. An instance of person 418 can be instan-
tiated and associated with an interviewee. Person informa-
tion 426 associated with the instance of person 418 can then
include biographical information of the interviewee. The
multimedia data videotaped sporting events. In this case, an
instance of person 418 can be created for a person associated
with the sporting event (e.g., player, referee, and broadcast-
ing personnel). An instance of person information 426
associated with the instance of person 418 can include
statistical information associated with the participant.

An event 408 includes an ID, type (e.g., segment, phrase,
interviewee, videographer, fact, or other), and sub-type (e.g., a
positive, negative, or informational event), timecodes, and a
comment (or descriptive note).

Thesaural keyword 412 includes an ID, a keyword ID
(i.e., the ID for an instance of keyword 410 for which the
thesaural keyword instance is an alternative), a label (i.e.,
the value of the keyword instance to which the thesaural
instance is related), a language of choice identifier (or
language ID), a preferred flag, and a characteristic (or class).
If set, the preferred flag specifies that the thesaural keyword
instance is the preferred alternative for the related keyword
instance in the language specified by the language ID. The
characteristic attribute further defines the thesaural keyword
instance. It can be used to identify that thesaural keyword
instance is a slang word, for example.

An ID, timecode and locator are included as attributes for
image 420. The locator attribute is used to locate the
digitized image, for example. Proposed keyword 414
includes an ID and a label. It is also possible to include the
attributes contained in keyword 410 in proposed keyword
414. Thus, the user that is proposing a new keyword can
enter as much information regarding the proposed keyword.
Proposed person 424 includes an ID and name attribute.
Like proposed keyword 414, the attributes associated with
person 418 can be included in proposed person 424. Type
416 includes an ID and a label.

Elements and their relationships can be managed using a
cataloguing mechanism and a relationship management
mechanism. The cataloguing mechanism includes a user
interface that includes a series of screens. During
cataloguing, a user (e.g., a cataloguer) reviews the input data
and causes elements to be instantiated and associated with
the input data and other elements. Elements that already
exist can be associated with the input data during catalog-
ing. In addition, a cataloguer can propose new elements and
relationships. The relationship management facility is used
to review the elements and relationships proposed by a
cataloguer. The relationship management facility can also be
used to create new elements and relationships.

Browser and Indexing Server Interface

Browser 318 and indexing server 316 interact to query a
multimedia catalogue and identify catalogue elements (e.g.,

5,813,014

15

instances of phrase 406) that satisfy specified criteria. Interface 314 provides a protocol to facilitate communication between browser 318 and indexing server 316. Interface 314 includes program interfaces to query the catalogue and attribute elements associated with the catalogue. FIG. 5 illustrates an overview of interface 314 between browser 318 and indexing server 316 according to an embodiment of the invention.

Interface 314 provides a mechanism for browser 318 to communicate request 504 to indexing server 316 and, for indexing server 316 to transmit data 502 to browser 318 in response to request 504. Various groupings of routines are provided by interface 314 to query the catalogue and its attributes and attribute element instances. One group of routines that return data associated with a general segment is file routines 510. File routines 510 includes routines that return the number of phrases, keywords, thesaural keywords, person keywords, or segments in a general segment. Other routines return the phrases, keywords, thesaural keywords, person keywords or segments in a general segment. Routines are provided in segment routines 512 that return similar information as those in file 510 for other segment types.

Phrase routines 514 contains routines that retrieve information associated with phrase 406 such as in or out time-codes for, or the number or instances of keywords in, an instance of phrase 406. Other routines in phrase routines 514 search the descriptive phrase attribute of phrase 406 to identify instances of phrase 406 that contain a search string. The number or actual instances of phrase 406 that contain the search string can be returned to browser 318.

Keyword group 516 contains routines that identify the instance of type 416 associated with an instance of keyword 410. Routines in this group can return the number or instances of segment 404 (e.g., a general segment or other segment) or phrase 406 that are associated with an instance of keyword 410. Other routines identify instances of keyword 410 having an associated label or a descriptive phrase that contains a search string.

The keyword hierarchy is queried using routines in keyword hierarchy group 518. Routines in this group can return the number or actual instances of keyword 410 that are either a parent or child of another instance of keyword 410. Person group 520 contains routines for identifying an instance of person 418 associated with a general segment or vice versa. The number or actual instances of person 418 can be returned that match first and/or last name search strings. Thesaural keyword group 522 contains routines that returns attribute information (e.g., ID or label for an instance of thesaural keyword 412). A search string can be compared against the label attribute in instances of thesaural keyword 412 to return the number or actual instances of thesaural keyword 412.

Instances of type 416 can be queried using type group 524 and type hierarchy group 526. Type group 524 contains routines that return attribute information (e.g., label and description attributes) for instances of type 416. Using other routines in this group, a search string can be compared against the label or description attribute in instances of type 416 to return the number or actual instances of type 416. The type hierarchy is queried using routines in type hierarchy group 526. Routines in this group can return the number or actual instances of type 416 that are either a parent or child of another instance of type 416.

The section entitled Browser-Indexing Server Interface Routines contains a more detailed discussion of the routines contained in each group. It should be apparent that other

16

groups and routines can be included in interface 314 to query and retrieve data from a catalogue.

Browser

Browser 318 includes a user interface that includes display and input regions. Any user interface can be used with browser 318. For example, a graphical user interface can be provided that displays values associated with instances of type 416 and/or keyword 410. Using the interface, a user can enter search criteria (e.g., a search string) that can be used to identify instances of type 416 or keyword 410. The instances selected based on the search criteria can be displayed in the user interface for review. A drag and drop capability can be used with the user interface to drag criteria into a search string. In addition to a user interface for entering search criteria, browser 318 includes a user interface for displaying the multimedia data identified in a search operation. Browser 318 processes search input and multimedia display operations. FIG. 6 provides a process flow for handling search and display operations according to an embodiment of the invention.

At step 602 (i.e., "input?"), a determination is made whether input is received by browser 318. If not, processing continues at step 602 to wait for input. At step 604 (i.e., "search operation?"), a determination is made whether the input is a search operation. If it is, processing continues at step 606 to perform the search and returns to step 602 to accept other input. If the input is not a search operation, processing continues at step 608. At step 608 (i.e., "play command?"), a determination is made whether the display input is a play command (e.g., forward, reverse, fast forward, fast reverse, or jump). If it is, processing continues at step 610 to transmit the play command to archive server 306 and processing continues at step 602 to await other input. If it is not a play command, processing continues at step 602 to accept other input.

Perform Search

At step 606 of FIG. 6, browser 318 performs a search based on a determination (in step 604) that the input is a search request. FIGS. 7A-7B provide a process flow for processing a search request according to an embodiment of the invention.

The invention stores previous searches and the results of the previous searches. The results of a search form a sub-catalogue, or collection of catalogue elements. Thus, when a search is entered, processing determines whether the search has already been performed. If so, the search results are retrieved. Therefore, there is no need to repeat a search. If the search is a new search, browser 318 performs the search. When search input is received, browser 318 determines whether a the type of search requested and initiates the search.

At step 702 (i.e., "search already exists?"), a determination is made whether the search specified in the input already exists. If the search already exists, processing continues at step 704 to identify the instance of segment 404 that was created for the search. If no instance of segment 404 is found, processing ends at step 736. If an instance of segment 404 is found, processing continues at step 706 to retrieve it. At step 706, the instances of phrase 406 associated with the segment instance are identified (e.g., the associated phrase ids are retrieved from indexing server 316 using GET_Phrases_In_Segment routine in segment group 512 of interface 314). Processing ends at step 736.

If it is determined at step 702 that the search has not already been performed, processing continues at step 722 to perform the search. At step 722 (i.e., type?"), the type of search is determined by browser 318. The type of search can

5,813,014

17

be determined, for example, from the selections made by the user when specifying the search criteria. A person search can be invoked by selecting a "search for person" control button and entering a person's name, for example. If it is a search of the instances of person 418, processing invokes a search 5 person flow at step 724. If it is determined that a type or keyword search is specified, processing continues at step 726 to invoke a type/keyword search. If it is determined at step 722 that the search involves a search of instances of person information 426, processing continues at step 728 to 10 invoke a search of instances of person information 426.

A search invoked in steps 724, 726, or 728 can return a set of phrase ids (none or more phrase ids). A determination is made at step 730 (i.e., "phrase id(s) identified?"), whether the search operation yielded any instances of phrase 406. If 15 not, processing ends at step 736. If so, processing continues at step 732 to create a segment instance. Instances of relationship 428 are formed between the segment instance and the instances of phrase 406 identified in the search operation. At step 734, the search criteria is stored in query 20 elements. These elements can be queried in a subsequent invocation of this process flow (at step 702) to determine whether the search already exists. Search elements are discussed in more detail in the section entitled Search Elements and Objects. Processing ends at step 736. 25

Type or Keyword Search

In addition to a person search, browser 318 can perform a type and/or keyword element search. If browser 318 determines at step 722 of FIG. 7B that the search operation is a type or keyword element search, browser 318 invokes 30 the search. FIGS. 8A–8D provide a type and keyword search process flow according to an embodiment of the invention.

The search request identifies the search criteria used to identify the instances of type 416 or keyword 410 (e.g., the search input specifies values for the label attributes of type 35 416 or keyword 410). Browser 318 can be used to display instances of type 416 and/or keyword 410. A drag and drop facility can be used to drag an instance into the search. A conjunction (e.g., "and" or "or") can be selected to combine more than one instances. Each instance of a type 416 or 40 keyword 410 that is dragged into a search represents an element of the search. Each element of the search criteria is processed to identify the instances of type 416 or keyword 410 that satisfy the search request. At step 802 (i.e., "all search elements processed?"), a determination is made 45 whether all of the search elements have been processed. If not processing continues at step 804 to get the next element of the search criteria (e.g., a potential label attribute value). At step 806, the search element is compared against the corresponding attribute (e.g., label attribute) of the element 50 instances being searched (i.e., instances of type 416 or keyword 410).

At step 810 (i.e., "found?"), a determination is made whether any element instances were found to match the search element, or criteria. If not, processing continues at 55 step 802 to process any remaining search elements. If element instances were found (e.g., one or more instances of keyword 410 met the criteria specified in the current search element), processing continues at step 812 to determine whether the element instances are already contained in a set 60 of found element instances. If so, processing continues at step 802 to process any remaining search elements. If not, processing continues at step 814 to add the element instances to the search set and processing continues at step 802 to process any remaining search elements.

If it is determined at step 802 that there are no more search elements, processing continues at step 816 to identify ele-

18

ment instances contained in a hierarchy of element instances (e.g., subtypes of instances of type 416 or child instances of keyword 410). At step 816, element instances that are child instances of the element instances contained in the search set are identified. At step 818, the child instances are added to the search set, if they are not already contained in the set. Processing ends at step 820.

Related Keyword/Type Search

Relationship 444 exists between keyword 410 and type 416 (see FIG. 4B). Relationship 444 can be used to identify a second search set using the search set created in FIG. 8A. Using relationship 444, a set of keyword instances can be identified from a set of types and vice versa. For example, if the search operation performed in FIG. 8A yielded a search set that contains one or more instances of type 416, relationship 444 can be queried to obtain a set of instances of keyword 410 associated (via instances of relationship 444) with instances of type 416 contained in the search set. Similarly, instances of type 416 can be identified, using relationship 444, from a search set created in FIG. 8A that contains instances of keyword 410. FIG. 8B contains a process flow for creating a second search set using the search set containing instances of type 416 or keyword 410 and relationship 444.

At step 822 (i.e., "all elements in set processed?"), a determination is made whether all of the element instances in the search set are processed. If not, processing continues at step 824 to get the next element instance (e.g., an instance of type 416 or keyword 410). At step 826, the element instance associated with the current element instance via relationship 444 is located. For example, an instance of keyword 410 is identified that is associated (via an instance of relationship 444) with an instance of type 416 in the search set. Or, an instance of type 416 is identified that is associated with an instance of keyword 410 in the search set.

At step 828 (i.e., "element instance found?"), a determination is made whether the element instance is found in step 826. If not processing continues at step 822 to process any remaining search set element instances. If so, processing continues at step 830 (i.e., element instance found in set?") to determine whether the related element instance already exists in the related element search set being created. If so, processing continues at step 828 to process any remaining search set elements. If it does not already exist in the related element search set, processing continues at step 832 to add the related element to the related element search set. Processing continues at step 822 to process any remaining elements in the search set.

If it is determined at step 822 that all elements in the search set have been processed, processing continues at step 834 to search the related elements' element hierarchy (e.g., the type hierarchy, if the related element search set contains instances of type 416). At step 836, element instances that are child instances of the related element instances contained in the related element search set are identified. At step 838, the child instances are added to the related element search set, if they are not already contained in the set. Processing ends at step 840.

The process flows of FIGS. 8A–8B can yield instances of keyword 410. A set of keyword instances can be used to identify a set of catalogue elements (e.g., phrase 406) that can be used to reference the multimedia data. FIG. 8C provides a process flow for identifying instances of phrase 406 that are associated with instances of keyword 410 contained in a search set created by a search operation according to an embodiment of the invention.

At step 850 (i.e., "all keywords in set processed?"), a determination is made whether there are any instances of

5,813,014

19

keyword 410 that remain to be processed. If not, processing ends at step 860. If so, processing continues at step 852 to get the next instance of keyword 410 in the search set. At step 854, a search is performed to identify instances of phrase 406 that are related (via relationship 430) to the current instance of keyword 410. For example, Get_Phrases_In_Testimony_Keyword can be called in keyword group 316 of interface 314 for each testimony instance. At step 856 (i.e., "phrase instance found not in phrase set?"), a determination is made whether the instances of phrase 406 identified in step 852 already exist in the set of phrases. If so, processing continues at step 850 to process any remaining keyword instances. If not, processing continues at step 858 to add the phrase instance(s) found in step 854 in the set of phrases. Processing continues at step 850 to process any remaining keyword instances.

Person Information Search

Person information 426 contains attribute information for instances of person 418. For example, person information 426 can contain birth date and place attribute information for an instance of person 418. A search operation can be performed on person information 426 to identify instances of person 418 having certain attributes. An instance of person 418 can be associated with an instance of segment 404 (e.g., a general segment) via relationship 432. The instance of segment 404 associated with the instance of person 418 can be used to identify the instances of phrase 406 contained within the segment instance. Further, an instance of person 418 can be used to identify associated instances of phrase 406 (using relationship 430). FIG. 9 provides a person information search process flow according to an embodiment of the invention.

At step 902, instances of person information 426 are examined using the selection criteria to identify those instances that satisfy the criteria. The instances of person information 426 can then be used to identify their associated (via relationship 436) instances of person 418. Instances of person 418 are associated with instances of segment 404 (e.g., via relationship 432). At step 904, relationship 432 can be used to identify instances of segment 404 associated with the selected instances of person 418. At step 906, the instances of phrase 406 contained within the instances of segment 404 are identified and used to create a phrase set.

At step 908 (i.e., "content search?"), a determination is made whether the keyword hierarchy should be searched to identify associated instances of phrase 406 having the desired content. For example, the search criteria includes a keyword element. If not, processing ends at step 918. If so, processing continues at step 910. At step 910 (i.e., "all phrases in set processed?"), a determination is made whether all of the instances of phrase 406 in the phrase set have been processed. If they have, processing ends at step 918. If not, processing continues at step 913 to get the next instance of phrase 406 in the phrase set. At step 914, the instances of keyword associated with the current instance of phrase 406 are examined to determine whether a content criteria specification is met. At step 916, a second phrase set is created that contains the instances of phrase in the first phrase set that satisfy the content specification. Processing continues at step 910 to process any remaining phrases.

Person Search

As previously discussed, an instance of person 418 can be used to identify instances of phrase 406 via segment 404 (and relationships 432 and 426) or via relationship 430. FIGS. 10A-10B provide a person search process flow according to an embodiment of the invention.

20

At step 1002, the instances of person 418 are examined using the selection criteria to identify those instances that satisfy the criteria. The instances of person 418 identified in step 1002 can then be used to identify their associated (via relationship 432) instances of segment 404. Segment 404 can be used to identify the instances of phrase 406 contained in segment 404. At step 1004, the instances of phrase 406 contained within the instances of segment 404 are identified and used to create a phrase set at step 1006.

At step 1008 (i.e., "content search?"), a determination is made whether the keyword hierarchy should be searched to identify associated instances of phrase 406 having the desired content. If not, processing ends at step 1018. If so, processing continues at step 1010. At step 1010 (i.e., "all phrases in set processed?"), a determination is made whether all of the instances of phrase 406 in the phrase set have been processed. If they have, processing ends at step 1018. If not, processing continues at step 1012 to get the next instance of phrase 406 in the phrase set. At step 1014, the instances of keyword associated with the current instance of phrase 406 are examined to determine whether a content criteria specification is met. At step 1016, a second phrase set is created that contains the instances of phrase in the first phrase set that satisfy the content specification. Processing continues at step 1010 to process any remaining phrases.

Search Elements and Objects

Query elements and objects are used to facilitate search operations. They retain information about a search. Preferably, the information retained is, for example, the search criteria and the search results. The criteria that is retained for a search can be used to compare against criteria specified for a subsequent search. If a match is found, the retained search results can be used to satisfy the current search. Thus, there is no need to duplicate a search. Query relations are stored on indexing server 316 in addition to being retained with instances to relate search criteria. In addition, an instance of segment 404 is created to relate the results of a search. FIG. 11 illustrates elements and element relationships for processing and retaining search requests according to an embodiment of the invention.

Segment 404, phrase 406, keyword 410, type 416, person 418, and person information 426 are the same as the same numbered elements provided in FIGS. 4A-4C. With one exception, the relationships between these elements are the same as those provided in FIGS. 4A-4C. Relationship 1124 between keyword 410 and segment 404 is a combination of relationships 428 and 430.

In addition to these elements, FIG. 11A contains query 1102 and query element 1116. Query 1102 is created for each search. An instance of query element 1104 is created for each element of a search (e.g., a keyword or type criteria element entered using the browser's user interface). For example, a search may identify two instances of keyword 410 as part of the search criteria. Each instance is a search element. An instance of query element 1104 is created for each of these search elements.

The relationships between the search elements and other elements is illustrated in FIG. 11A. Query 1102 can include at least one instance of either type 416 (relationship 1128), keyword 410 (relationship 1126), person information 426 (relationship 1132), or person 418 (relationship 1134). An instance of query 1102 can consist of multiple instances of these four elements. A search element of query 1102 is an instance of one of these four elements. Each search element is retained in an instance of query element 1116. Query 1102 is related via relationship 1116 to one or more instances of query element 1104. That is, query 1102 can contain one or more instances of query element 1116.

5,813,014

21

FIG. 11B illustrates attributes for query 1102, query element 1104 and a relationship between them (i.e., query element record 1106). Query 1102 contains an identifier (ID). Query element 1104 contains an identifier (ID). Query 1102 and query element 1104 are related via relationship 1116 (see FIG. 11A). Relationship 1116 is implemented using query element record 1106. Query element record 1106 contains the identifier for the associated query 1102 and query element 1104. In addition, query element record 1106 includes an identifier.

Attributes of query element record 1106 store the cardinal and conjunctive information for its associated instance of query element 1104. Conjunctivity is retained in the "AndOr" attribute. Cardinality is stored in the element order attribute. Thus, a search can be reconstructed by collecting all of the associated instances of query element record 1106 and query element 1104. The order and relationship of each search element can be determined from each instance of query element record 1106.

Thus, the criteria for a search can be recreated and compared to a new set of search criteria. If a match is found, the instance of query 1102 associated with the match can be used to find its associated instance of segment 404 (via relationship 1114). The instances of phrase 406 associated with the instance of segment 404 (via relationship 423) can then be identified. If a match is not found, a search can be performed to identify a new instance of segment 404 and its associated instances of phrase 406.

Instances of phrase 406 can be sent to archive server 306 for retrieval from storage and playback. The following section discusses the retrieval and playback of data associated with instances of phrase 406.

Multimedia Data Retrieval and Play

Archive server 306 tracks the location of the multimedia data such that it can identify the instance of tertiary storage manager 304 that manages the data. Archive server 306 tracks the location of the multimedia data such that it can be retrieved when requested by browser 318. Phrase 406 is used by both browser 318 and archive server 306 to identify a piece of multimedia data. FIG. 12 illustrates use of the phrase element to access multimedia data in accordance with an embodiment of the invention.

Phrase 406 is an attribute element that is associated with a portion of multimedia data. Phrase 406 has ID and timecode attributes. A corresponding instance of phrase is maintained by archive server 306, i.e., phrase 1206. Phrase 1206 has an ID that corresponds with the ID of its counterpart instance of phrase 406. Similarly, the timecode attributes of phrase 1206 correspond to the timecode attributes of phrase 406. In addition, phrase 1206 has a path to attribute that points to the physical storage location of the portion of multimedia data associated with phrase 1206 (and 406).

The input data path attribute of phrase 1206 can be used to load the multimedia data from a storage device. Multimedia data is permanently stored in storage 1208 (e.g., a tape system such as a provided by JMASS). In addition, the invention uses one or more instances of cache to temporarily store the multimedia data. Cache manager 1210 manages one or more caches (cache 1 through cache N). Cache 1-N are one terabyte (Tb) caches, for example.

Before browser 318 sends a play command to method player 302, it sends a set of phrase IDs to archive server 306. Archive server 306 uses the phrase IDs to identify the multimedia data requested for play. Archive server 306 determines the location (e.g., storage 1208 or cache 1 through cache N) of the data using the phrase IDs and

22

interfaces with the instance of tertiary storage manager 304 that manages the store. FIGS. 13A-13B provide a process flow for handling a play command invocation received from a browser according to an embodiment of the invention.

At step 1300, archive server 306 determines the location of the data and requests the appropriate instance of tertiary storage manager 304 to retrieve the multimedia data from a storage location. At step 1302, a thread (e.g., an instance of method player 302) is forked to play the data on browser 318. At step 1304, the data is transferred by tertiary storage manager 304 to the spawned thread. At step 1306, the spawned thread prepares the data (e.g., decompresses and renders the data) and transfers it to browser 318. At step 1308 (i.e., "end of data?"), a determination is made whether there is any data remaining to be played. If there is no more data, processing continues at step 1310 to stop play and terminate the player thread. Processing ends at step 1312.

If it is determined at step 1308 that data remains to be played, processing continues at step 1314. During play, a user can initiate a play command such as forward, reverse, fast forward, fast reverse, or jump. The jump command provides the ability to jump to a particular frame in the multimedia data. At step 1314 (i.e., "play command"), a determination is made whether a play command has been received from the user. If not, processing continues at step 1308 to determine whether any data remains to be processed. If it is determined that a play command has been received, processing continues at step 1316.

At step 1316 (i.e., "stop command?"), a determination is made whether a stop command was received. If so, processing continues at step 1310 to terminate the player and end processing. Otherwise, processing continues at step 1318 to process the play command and then processing continues at step 1308 to play any remaining data. As previously indicated, a play command can change the direction or speed of play, for example. In this case, the player performs the requested change. A fast forward command is processed by doubling the rate at which the data is displayed, for example.

A jump command is a play command that moves the play point to another phrase within a sequence of phrases. When a jump command is specified, it includes a phrase ID that can be used to identify the jump location within the phrase sequence. The player stops play and uses the phrase ID to identify the point in the sequence (i.e., phrase) that corresponds with the phrase ID. When play resumes, the phrase identified by the jump location is displayed. Thus, a jump command positions the player at a specified phrase, so that subsequent play, forward, reverse, fast forward, and fast reverse operations begin at the first frame of the phrase.

Asset Management Objects

The functionality discussed above can be implemented in one or more objects. FIG. 14 provides an example of objects that can be used to perform asset management functionality.

Browser object 1402 encapsulates those operations that method player 302 performs on browser 318. Browser object 1402 is a mechanism for method player 302 to notify browser 318 of interesting or exceptional events. Browser object 1402 can provide a method that can be called for each event, for example. Method player object 1404 encapsulates the functionality that browser 318 requires to play an instance of phrase 406 or a sequence of phrase instances. Method player object 1404 is an object factory for other objects, such as player object 1406 and phrase manager object 1408. Preferably, there is only one instance of method player object 1404 active for an instance of browser 318.

Phrase object 1410 is associated with an instance of phrase 406. Phrase object 1410 contains state information

5,813,014

23

for an instance of phrase 406 such as the start and end time code relative to the original tape and is uniquely identified by a phrase ID. When an instance of phrase object 1410 is constructed, the data associated with the phrase is retrieved from storage 1208. Phrase object 1410 includes one or more methods to locate (and/or extract) its associated data. A request for cached data is processed by an instance of phrase object 1410. Phrase object 1410 includes a method to play its associated data and to process play commands (e.g., play, stop, forward, reverse, fast forward, fast reverse, etc.).

Phrase sequence object 1412 represents a sequence of phrases, that like a phrase object 1410, knows how to play itself on a player. Further, it has the ability to handle play commands. Additionally, phrase sequence 1412 provides one or more methods to process a jump command. A jump operation positions the sequence of phrases associated with an instance of phrase sequence object 1412 at the first frame of a specified phrase in the sequence.

Phrase manager object 1414 is responsible for instantiating instances of phrase object 1410 and phrase sequence object 1412 using the phrase IDs provided by browser 318. Further, phrase manager object 1414 tracks instances of phrase object 1410 and phrase sequence object 1412 and prohibits their data from being purged from cache if the data is currently in use.

Player object 1416 encapsulates the operations of a movie player. Instances of phrase object 1410 and/or phrase sequence object 1412 use player object 1416 to play themselves in a region on a display of browser 318. Player object 1416 provide a mechanism for phrase object 1410 or phrase sequence object 1412 to produce a bit stream in a format that it can play. Player object 1416 consumes the data by decoding and playing it into a display region. Player object 1416 may utilize special hardware to accomplish this such as the Optivision's MPEG decoder. Player object 1416 is created by method player object 1404.

FIG. 14 further illustrates the relationship that exist between the asset management objects. An instance of browser object 1402 uses an instance of method player

24

object 1404. Method player object 1404 can use an instance of player object 1416 and phrase manager object 1414. Phrase sequence object 1412 contains n instances of phrase object 1410. Phrase object 1410 can use an instance of player object 1416. Phrase sequence object 1412 can use an instance of player object 1416.

A clip object 1418 provided by an object instance provides data that can be played by an instance of player object 1416. Further, clip object 1418 can serve as a producer of movie data for an instance of player object 1416. Clip object 1418 specifies its associated instance of player object 1416 and the display region(s) and frame rate for play. In addition, clip object 1418 provides operations to begin playing a clip on an instance of player object 1416 from the current position, to stop play progression and display the current frame as a still in the display region, to initiate forward progression from a current position at a specified frame rate, to reverse play from the current position at a specified frame rate, to fast forward play at twice the specified frame rate, and to fast reverse play at twice the specified frame rate.

Phrase object 1410 is a subclass of clip. Phrase sequence is also a subclass of clip object 1418. Phrase sequence object 1412 uses state information from clip object 1418 when a jump operation is performed. If clip object 1418 is in a "stopped" state when a jump operation is performed, the first frame of the sequence of phrases for the phrase sequence object 1412 is displayed in the display region. If clip object 1412 is in a "playing" state, play jumps to the first frame of the phrase that is being played and continues playing at that point. If clip object 1412 is in a "fast forward" state, play jumps to the first frame of the current phrase and enters a "playing" state. If clip object 1412 is in a "fast reverse" state, play jumps to the first frame of the current phrase and enters a "playing" state.

Browser and Indexing Server Interface Routines

The following identifies examples of routines contained in interface 314. Other routines can be used to replace or supplement some or all of the routines provided below.

5,813,014

25                                                         26

Testimony (or File) Routines

Get_Number_Phrases_In_Testimony(int testimony)

    Returns the number of phrases in a testimony.
    SQL:  Select count (*)
20             From  Phrase
            TestimonyID = testimony

Get_Phrases_In_Testimony(int testimony, set phrases)

    Returns the set of phrases in testimony.
    SQL:  Select PhraseID

84300.914                          60

5,813,014

27                                                                    28

From   Phrase
TestimonyID = testimony

Get_PhraseStruct_In_Testimony(int testimony_id, int
phrase_id, PHRASE*P)

5              Returns the phrase structure identified by PhraseID, in
               TestimonyID.
               SQL:  Select TestimonyID, PhraseID, InTimeCode, OutTimeCode,
                     From  Phrase
                     Where TestimonyID = testimony
10                   And PhraseID = phrase

Get_Number_Segments_In_Testimony(int testimony)

               Returns the number of segments in a testimony.
               SQL:  Select count (*)
15                   From  PhraseCollection
                     TestimonyID = testimony

Get_Segments_In_Testimony(int testimony, set segments)

               Returns the set of phrases in a testimony.
20             SQL:  Select SegmentID
                     From  PhraseCollection
                     TestimonyID = testimony

Get_Number_Segments_In_CollectionType(int coll_type)

25             Returns the number of segments of a collection type.
               SQL:  Select count (*)
                     From  Segment
                     Where CollectionTypeID = coll_type

30    Get_Segments_In_CollectionType(int coll_type, set segments)

               Returns the set of a given collection type
               SQL:  Select SegmentID
                     From  Segment
                     Where CollectionTypeID = coll_type
35

5,813,014

29                                                              30

Get_Number_Keywords_In_Testimony(int testimony)

    Returns the number of Keywords in a testimony.
    SQL:  Select count (*)
          From  KeywordPhraseRecord

5            TestimonyID = testimony

Get_Keywords_In_Testimony(int testimony, set*keywords)

    Returns the set of keywordIDs in a testimony
    SQL:  Select Keyword ID

10         From   KeywordPhraseRecord
          Where TestimonyID = testimony

Get_Number_Thesaural_Keywords_In_Testimony(int
testimony)

15    Returns the number of Thesaural Keywords in a testimony
    SQL:  Select count (*)
          From  ThesauralKeyword
          TestimonyID = testimony

20   Get_Thesaural_Keywords_In_Testimony(int testimony, set
*keywords)

    Returns the set of Thesaural keywordIDs in a testimony
    SQL:  Select ThesauralKeywordID
          From  ThesauralKeyword

25         Where TestimonyID = testimony

Get_Number_Person_Keywords_In_Testimony(int
testimony)

    Returns the number of Person Keywords in a testimony.
30    SQL:  Select count (*)
          From  PersonKeyword
          TestimonyID = testimony

Get_Person_Keywords_In_Testimony(int testimony,
35   set*persons)

5,813,014

31  32

Returns the set of person IDs in a testimony
SQL:  Select PersonID
      From  PersonKeyword
      Where TestimonyID = testimony

5    *Segment Routines*

Get_Collection_Type_In_Segment(int segment)

Returns the collection type of a segment.
SQL:  Select CollectionTypeID
      From  Segment
10    Where SegmentID = segment

Get_Segment_Description(int segment, char() description)

Returns the segment description of a segment.
SQL:  Select Seg_Desc
15    From  Segment
      Where SegmentID = segment

Get_Number_Phrases_In_Segment(int segment)

Returns the number of phrases in a segment
20    SQL:  Select count (*)
      From  PhraseCollection
      Where SegmentID = segment

Get_Phrases_In_Segment(int segment, set*phrases)

25    Returns the set of PhraseID's in a segment
SQL:  Select PhraseID
      From  PhraseCollection
      And SegmentID = segment

30    Get_Number_Keywords_In_Segment(int segment)

Returns the number of Keywords in a segment.
SQL:  Select count (*)
      From  KeywordSegmentRecord

84300.914                    63

5,813,014

33                                                    34

Where SegmentID = segment

Get_Keywords_In_Segment(int segment, set*keywords)

Returns the set of keywordIDs in a segment
5            SQL:   Select Keyword ID
                    From  KeywordSegmentRecord
                    Where SegmentID = segment

10      Is_String_In_Segment_Description(char*search, int segment,
        boolean AnyFlag)

                    Returns the number of segments that a search string
                    appears in the segment description.
                    SQL:  (AnyFlag = 0)
15                         Select count (*)
                           From  Segment
                           Where SegmentID = segment (see NOTE)
                           And Seg_Desc LIKE 'search'

20                  SQL:  (AnyFlag = 1)
                           Select count (*)
                           From  segment
                           Where SegmentID = segment (see NOTE)
                           And Seg_Desc LIKE '%search%'

25      Get_Segment_In_Search_String(char*search, int any,
        set*segments)

                    Returns the set of segments that a search string appears
                    in the segment description.
                    SQL:  (AnyFlag = 0)
30                         Select SegmentID
                           From  Segment
                           Any Seg_Desc LIKE 'search'

                    SQL:  (AnyFlag = 1)
                           Select SegmentID
35                         From  Segment
                           And Seg_Desc LIKE '%search%'

5,813,014

35       36

*Phrase Routines*

Get_InTime_In_Testimony_Phrase(int testimony, int phrase, char *intime)

    Returns the InTimeCode of a phrase.
5     SQL: Select InTimeCode
          From  Phrase
          Where TestimonyID = testimony
          And PhraseID = phrase

10 Get_OutTime_In_Testimony_Phrase(int testimony, int phrase, char *outtime)

    Returns the OutTimeCode of a phase.
    SQL: Select OutTimeCode
          From  Phrase
15           Where TestimonyID = testimony
          And PhraseID = phrase

Get_Number_Keywords_In_Testimony_Phrase(int testimony, int phrase)

20     Returns the number of Keywords in a testimony, phrase.
    SQL: Select count (*)
          From  KeywordPhraseRecord
          Where TestimonyID = testimony
          And PhraseID = Phrase
25
Get_Keywords_In_Testimony_Phrase(int testimony, int phrase, set*keywords)

    Returns the set of keywordIDs in a testimony, phrase.
    SQL: Select KeywordID
30           From  KeywordPhraseRecord
          Where TestimonyID = testimony
          And PhraseID = phrase

Is_String_In_Phrase_Description(char*search, int testimony, 
35   int phrase, boolean AnyFlag)

84300.914         65

5,813,014

37                                          38

Returns number of phrases where search string is
contained in a phrase description.

SQL:  (AnyFlag = 0)
        Select count (*)
        From  Phrase
        Where TEstimonyID = testimony (see NOTE)
        And PhraseID = phrase (see NOTE)
        And Desc_Phrase = search

SQL:  (AnyFlag = 1)
        Select count (*)
        From  Phrase
        Where TEstimonyID = testimony (see NOTE)
        And PhraseID = phrase
        And Desc_Phrase = '%search%'

Get_Phrase_In_Description_Search_String(char search, int
testimony, boolean AnyFlag, set *phrases)

Returns set of phrases IDs where search string is
contained in a phrase description.  (see NOTE)

SQL:  (AnyFlag = 0)
        Select count (*)
        From  Phrase
        Where TEstimonyID = testimony
        And Desc_Phrase = search

SQL:  (AnyFlag = 1)
        Select count (*)
        From  Phrase
        Where TEstimonyID = testimony
        And Desc_Phrase = '%search%'

*Keyword Routines*

Get_Type_In_Keyword(int keyword)

Returns the TypeID of a keyword.
SQL:  Select TypeID

84300.914                        66

5,813,014

39                                           40

```
               From  Keyword
               Where KeywordID = keyword

       Get_Number_Authority_In_Keyword(int keyword)

5              Returns the number of AuthorityIDs for a keyword.
               SQL:  Select count (*)
                     From  KeywordAuthorityRecord
                     KeywordID = keyword

10     Get_Authorities_In_Keyword(int keyword, set authority)

               Returns the set of AuthorityIDs for a keyword
               SQL:  Select AuthorityID
                     From  KeywordAuthorityRecord
                     Where KeywordID = keyword
15
       Get_Details_In_Keyword_Authority(keyword, authority,
       char*details)

               Returns the ReferenceDetails of a KeywordAuthorityRecord.
               SQL:  Select ReferenceDetails
20                   From  AuthorityDetails
                     Where KeywordID = keyword
                     And AuthorityID = authorityID

       Get_Number_Testimony_In_Keyword(int keyword)

25             Returns the number of testimonies in a keyword appears in.
               SQL:  Select count (DISTINCT TestimonyID)
                     From  KeywordPhraseRecord
                     KeywordID = keyword

30     Get_Testimony_In_Keyword(int keyword, set testimony)
               Returns the set of TestimonyIDs that a keyword appears in.
               SQL:  Select TestimonyID
                     From  KeywordPhraseRecord
                     Where KeywordID = keyword
35
       Get_Number_Segment_In_Keyword(int keyword)
```

5,813,014

41                                                                    42

Returns the number of segments in a keyword appears
in.
SQL:  Select count (DISTINCT SegmentID)
      From  KeywordsSegmentRecord
      KeywordID = keyword

Get_Segment_In_Keyword(int keyword, set testimony)

Returns the set of segmentIDs that a keyword appears in.
SQL:  Select TestimonyID
      From  KeywordSegmentRecord
      Where KeywordID = keyword

Get_Number_Phrases_In_Testimony_Keyword(int testimony,
int keyword)

Returns the number of phrases that a keyword appears in
for a given testimony.
SQL:  Select count (DISTINCT PhraseID)
      From  KeywordPhraseRecord
      Where TestimonyID = testimony
      And KeywordID = keyword

Get_Phrase_In_Testimony_Keyword(testimony, keyword, set
phrases)

Returns the set of PhraseIDs that a keyword appears in
for a given testimony.
SQL:  Select Phrase ID
      From  KeywordPhraseRecord
      Where TestimonyID = testimony
      And KeywordID = keyword

Is_String_In_Keyword_Label(char*search, int keyword,
boolean AnyFlag)

Returns boolean if search string is contained in a

keyword.
SQL:  (AnyFlag = 0)

5,813,014

43                                                                          44

```
                              Select count (*)
                              From  Keyword
                              Where KeywordID = keyword
                              And Label LIKE 'search'
        5
                       SQL:  (AnyFlag = 1)
                              Select count (*)
                              From  Keyword
                              Where KeywordID = keyword
       10                     And Label LIKE '%search%'

              Get_Keyword_In_Label_Search_String (char*search, int
              AnyFlag, set *keyword)

                       Returns the set of keywordIDs that match a label search string.
       15              SQL:  (AnyFlag = 0)
                              Select KeywordID
                              From  Keyword
                              Where Label LIKE 'search'

       20              SQL:  (AnyFlag = 1)
                              Select count (*)
                              Select KeywordID
                              From  Keyword
                              Where Label LIKE '%search%'
       25
              Is_String_In_Keyword_Description (char*search, int keyword,
              boolean AnyFlag)

                       Returns boolean if search string is contained in a
                       keyword description.
       30              SQL:  (AnyFlag = 0)
                              Select count (*)
                              From  Keyword
                              Where KeywordID = keyword
                              And KWDescription LIKE Label
       35
                       SQL:  (AnyFlag = 1)
                              Select count (*)
                              From  Keyword
```

5,813,014

45                                                                46

Where KeywordID = keyword
And KWDescription LIKE '%search%'

5       Get_Keyword_In_Description_Search_String (char *search, int
        AnyFlag, set *keyword)

           Returns the set of keywordIDs that match a description
           search string.
           SQL:  (AnyFlag = 0)
10                Select KeywordID
                  From  Keyword
                  Where KWDescription LIKE 'search'

           SQL:  (AnyFlag = 1)
                  Select count (*)
15                Select KeywordID
                  From  Keyword
                  Where KWDescription LIKE '%search%'

20      Is_String_In_Keyword_Soundex (char *search, int keyword,
        boolean AnyFlag)

           Returns boolean if search string is contained in a
           keyword soundex.
           SQL:  (AnyFlag = 0)
                  Select count (*)
25                From  Keyword
                  Where KeywordID = keyword
                  And SoundexCode LIKE Label

           SQL:  (AnyFlag = 1)
30                Select count (*)
                  From  Keyword
                  Where KeywordID = keyword
                  And SoundexCode LIKE '%search%'

35
        Get_Keyword_In_Soundex_Search_String (char *search, int
        AnyFlag, set *keyword)

84900.914                              70

5,813,014

47                                                48

Returns the set of keywordIDs that match a soundexCode
search string.

SQL:   (AnyFlag = 0)
           Select KeywordID
5          From  Keyword
           Where SoundexCOde LIKE 'search'

SQL:   (AnyFlag = 1)
           Select count (*)
10         Select KeywordID
           From  Keyword
           Where SoundexCode LIKE '%search%'

*Keyword Inheritance Routines*

Get_Number_Parent_In_Keyword(int keyword)

15         Returns number of parent KeywordIDs for a given keyword.
           SQL:  Select count (*)
                    From  KWInheritance
                    Where KeywordID = keyword

20     Get_Parent_In_Keyword(int keyword, set parents)

           Gets the set of parent KeywordIDs of a given keyword.
           SQL:  Select ParentKeywordID
                    From  KWInheritance
                    Where Keyword ID = keyword
25
       Get_Prefferd_Parent_In_Keyword(int keyword)

           Returns the preferred parentTypeIDs of a given type.
           SQL:  Select ParentKeywordID
                    From  KWInheritance
30                  Where KeywordID = type
                    And PrefKWParent = 1;

       Get_Number_Children_In_Keyword(int keyword)

           Returns count of child KeywordIDs for a given keyword.

84360.914                              71

5,813,014

49                                                                      50

```
            SQL: Select count (*)
                 From  KWInheritance
                 Where ParentKeywordID = keyword

  5    Get_Children_In_Keyword(int keyword, set children)

            Returns the set of child KeywordIDs of a given keyword.
            SQL: Select KeywordID(ID
                 From  KWInheritance
                 Where ParentKeywordID = keyword

  10   Person Routines

            Get_Name_In_Person(int person, char *name)

            Returns the full name of a person
            SQL: Select FirstName, LastName
                 From  Person
  15             Where PersonID = person

            Get_PersonID_In_Testimony(int testimony)

            Returns the personID of a survivor who gave testimony.
            SQL: Select SurvivorID
  20             From  Testimony
                 Where TestimonyID = testimony

            Get_TestimonyID_In_Person(int person)

            Returns the TestimonyID of the survivor identified by
  25        person ID.
            SQL: Select TestimonyID
                 From  Testimony
                 Where SurvivorID = person

  30   Is_String_In_Person_Name(char *first, char *last, boolean
        AnyFlag)

            Returns number of PersonIDs who match first and last
            name search strings.
```

5,813,014

51                                                    52

```
SQL: (AnyFlag = 0)
     Select count (*)
     From  Person p, Survivor s
     Where p. PersonID = s.PersonID
     And FirstName LIKE 'first'
     AND LastName LIKE 'last'

SQL: (AnyFlag = 1)
     Select count (*)
     From  Person p, Survivor s
     Where p.PersonID = s.PersonID
     And FirstName LIKE '%first%'
     And LastName LIKE '%last%'
```

Get_Person_In_Name_Search_String(char *first, char *last, int AnyFlag, set *persons)

    Returns the set of personIDs that match a name search strings.

```
SQL: (AnyFlag = 0)
     Select PersonID
     From  Person p, Survivor s
     Where p.PersonID = s.PersonID
     And FirstName LIKE 'first'
     And LastName LIKE 'last'

SQL: (AnyFlag = 1)
     Select PersonID
     Where p.PersonID = s.PersonID
     And FirstName LIKE '%first%'
     And LastName LIKE '%last%'
```

*Thesaural Keyword Inheritance Routines*

Get_Keyword_In_Thesaural_Keyword(int thes_keyword)

    Returns the KeywordID of a thesaural keyword.

```
SQL: Select KeywordID
     From  ThesauralKeyword
     Where ThesauralKWID = thes_keyword
```

5,813,014

53                                                                            54

Get_Label_In_Thesaural_Keyword(int thes_keyword, char
*label)

    Returns the Label of a thesaural keyword.

5       SQL:  Select ThesauralLabel
           From  ThesauralKeyword
           Where ThesauralKWID = thes_keyword

Is_String_In_Thesaural_Keyword_Label(char *search, int
10   thes_keyword, boolean AnyFlag)

    Returns number of thesaural keywords in which a search
    string is contained in a label.

       SQL:  (AnyFlag = 0)
           Select count (*)
15           From  ThesauralKeyword
           Where ThesauralKWID = thes_keyword (see
           NOTE)
           And ThesauralLabel LIKE 'search'

20       SQL:  (AnyFlag = 1)
           Select count (*)
           From  ThesauralKeyword
           Where ThesauralKWID = thes_keyword (see
           NOTE)
25           And ThesauralLabel LIKE 'search'

Get_Thesaural_Keyword_In_Label_Search_String(char *search
, int AnyFlag, set *keyword)

    Gets the set of keywordIDs that match a label search

30   string.

       SQL:  (AnyFlag = 0)
           Select ThesauralKWID
           From  ThesauralKeyword
           Where ThesauralLabel LIKE 'search'
35

       SQL:  (AnyFlag = 1)

5,813,014

55                                                              56

```
         Select ThesauralKWID
         From  ThesauralKeyword
         Where ThesauralLabel LIKE 'search'

    Type Routines

5   Get_Label_In_Type(int type, char *label)

         Returns the TypeLabel of a type.
         SQL: Select TypeLabel
              From  Type
              Where TypeID = type
10
    Get_Description_In_Type(int type, char *description)

         Returns the TypeDescription of a type.
         SQL: Select TypeDescription
              From  Type
15            Where TypeID = type

    Get_Number_Keywords_In_Type(int type)

         Returns the number of keywords of a type
         SQL: Select count (*)
20            From  Keyword
              TypeID = type

    Get_Keyword_In_Type(int type, set keywords)

         Gets the set of keywords of a given type.
25       SQL: Select KeywordID
              From  Keyword
              Where TypeID = type

    Is_String_In_Type_Label(char *search, int, type, boolean
30  AnyFlag)

         Returns number of TypeIDs where a search string is
         contained in a type label.
         SQL: (AnyFlag = 0)
```

5,813,014

57                                                          58

```
                          Select count (*)
                          From  Type
                          Where TypeID = type (see NOTE)
                          And TypeLabel LIKE 'search'
    5            SQL:  (AnyFlag = 1)
                          Select count (*)
                          From  Type
                          Where TypeID = type (see NOTE)
                          And TypeLabel LIKE '%search%'
   10
            Get_Type_In_Label_Search_String(char *search, int AnyFlag,
            set*types)

                     Gets the set of TYpeIDs that match a label search string.
                          SQL:  (AnyFlag = 0)
   15                          Select TypeID
                          From  Type
                          Where TypeLabel LIKE 'search'


                          SQL:  (AnyFlag = 1)
   20                          Select TypeID
                          From  Type
                          Where TypeLabel LIKE '%search%'


            Is_String_In_Type_Description(char *search, int type, boolean
   25       AnyFlag)

                     Returns number of typeIDs where search string is
                     contained in a type description.
                          SQL:  (AnyFlag = 0)
                          Select count (*)
   30                          From  Type
                          Where TypeID = type (see NOTE)
                          And TypeDescription LIKE 'search'


                          SQL:  (AnyFlag = 1)
   35                          Select count (*)
                          From  Type
                          Where TypeID = type (see NOTE)
                          And TypeDescription LIKE '%search%'
```

34300.914                        76

5,813,014

59                                           60

Get_Type_In_Description_Search_String (char *search, int AnyFlag, set *types)

    Returns the set of TypeIDs that match a description search string.
5

    SQL:  (AnyFlag = 0)
        Select TypeID
        From  Type
        Where TypeDescription LIKE 'search'
10

    SQL:  (AnyFlag = 1)
        Select TypeID
        From  Type
        Where Type Description LIKE '%search%'

15    *Type Inheritance Routines*

    Get_Number_Parent_In_Type(int type)

    Returns number of parentTypeIDs for a given type.
    SQL:  Select count (*)
        From  TypeInheritance
20                    Where TypeID = type

    Get_Parent_In_Type(int type, set parents)

    Returns the set of parentTypeIDs of a given type.
    SQL:  Select ParentTypeID
25                    From  TypeInheritance
        Where TypeID = type

    Get_Preffered_Parent_In_Type(int type)

    Returns the preffered parentTypeIDs of a given type.
30                    SQL:  Select ParentTypeID
        From  TypeInheritance
        Where TypeID = type

84200.914                        77

5,813,014

61                                                              62

And PrefTypeParent = 1;

Get_Number_Children_In_Type(int type)

Returns number of child TypeIDs for a given type.

5      SQL:   Select count (*)
              From  TypeInheritance
              Where ParentTypeID = type

Get_Children_In_Type(int type, set children)

10     Returns the set of child TypeIDs of a given type.
       SQL:   Select TypeID
              From  TypeInheritance
              Where ParentTypeID = type

84300.914                    78

5,813,014

63

Thus, a method an apparatus for managing multimedia assets has been provided.

I claim:

1. A method of accessing multimedia data comprising the steps of:

defining a catalogue for said multimedia data having a plurality of catalogue elements each of which is associated with a portion of said multimedia data, said plurality of catalogue elements associated with a plurality of keywords of said catalogue, said plurality of keywords identifying said multimedia data, said plurality of keywords being interrelated by one or more of associative, whole-part and inheritance relationships;

specifying a search request;

identifying a result of said search request that satisfies said search request, said result containing one or more of said plurality of catalogue elements;

retrieving said portion of said multimedia data associated with said one or more of said plurality of catalogue elements;

storing in said catalogue said search request; and

storing in said catalogue said search result.

2. The method of claim 1 further comprising the steps of:

specifying a second search request;

comparing said second search request with said search request;

retrieving said search result when said second search request is the same as said search request.

3. The method of claim 1 wherein said search request is comprised of one or more elements, the step of storing said search request further comprises the steps of:

storing said one or more elements; and

storing cardinality information for said one or more elements; and

storing conjunctivity information for said one or more elements.

4. The method of claim 1 wherein said step of storing said search result further comprises the steps of:

creating a container element; and

creating a relationship between said container element and said one or more of said catalogue elements.

5. The method of claim 1 wherein said catalogue has a plurality of attribute and attribute elements, said step of identifying further comprises the step of performing one or more query operations on said plurality of attribute and attribute elements to identify said one or more of said catalogue elements.

6. The method of claim 1 wherein said step of identifying further comprises the steps of:

identifying a plurality of type instances using said search request;

identifying a plurality of keyword instances related to said plurality of type instances; and

identifying said one or more of said catalogue elements related to said keyword instances.

7. The method of claim 6 wherein said step of identifying a plurality of type instances further comprises the steps of:

identifying a second set of type instances that meet a set of criteria in said search request;

identifying a second set of type instances that includes said set of type instances and type instances that are subtypes of said set of type instances.

8. The method of claim 7 wherein said step of identifying a plurality of keyword instances further comprises the steps of:

64

identifying a set of keyword instances that are related to said second set of type instances;

identifying a second set of keyword instances that include said set of keyword instances and child keyword instances of said set of keyword instances.

9. The method of claim 5 further comprising the steps of:

identifying a plurality of keyword instances based on said search request;

identifying said one or more of said catalogue elements related to said keyword instances.

10. The method of claim 1 wherein said step of identifying further comprises the steps of:

identifying a plurality of person instances using said search request;

identifying a plurality of container elements related to said plurality of person instances; and

identifying a plurality of catalogue elements related to said plurality of container element instances.

11. The method of claim 10 further comprising the steps of:

identifying a plurality of keywords associated with one of said plurality of catalogue elements;

examining said plurality of keywords to determine whether said one of said plurality of catalogue elements satisfies content criteria specified in said search request; and

including said one of said plurality of catalogue elements in a set of catalogue elements when said content criteria is satisfied.

12. The method of claim 10 wherein said step of identifying a plurality of person instances further comprises the steps of:

identifying a plurality of person information instances using said search request; and

identifying a plurality of person instances related to said plurality of person information instances.

13. The method of claim 1 wherein said step of retrieving further comprises the steps of:

associating a plurality of identifiers (IDs) to said portion of said multimedia data;

creating a pointers for each of said plurality of IDs, said physical storage pointer pointing to a location in which said portion of said multimedia data is stored;

retrieving said plurality of IDs;

retrieving said portion of said multimedia data from storage using said pointers.

14. The method of claim 1 wherein said step of retrieving further comprises the steps of:

searching cache for said portion of said multimedia data;

retrieving said portion of multimedia data into said cache from permanent storage, if said portion of multimedia data is resident on permanent storage and is not found in said cache.

15. A multimedia system comprising:

a browser;

a text interface coupled to said browser, said text interface comprising at least one class of methods configured to specify a request for multimedia data;

an indexing server coupled to said text interface, said indexing server configured to maintain a catalogue comprising a plurality of catalogue elements associated with a plurality of keywords of said catalogue, said plurality of keywords identifying said multimedia data,

5,813,014

65

said plurality of keywords being interrelated by one or more of associative, whole-part and inheritance relationships;

a first media interface coupled to said browser, said interface configured to transmit a set of identifiers (IDs) associated with said multimedia data;

an archive server coupled to said media interface, said archive server configured to locate and retrieve said multimedia data using said set of IDs;

a second media interface coupled to said browser, said interface configured to transmit said multimedia data associated with said set of IDs;

a method player coupled to said second media interface.

16. The system of claim 15 wherein said indexing server comprises:

a database management system (DBMS);

said plurality of catalogue elements coupled to said DBMS;

a plurality of attributes and attribute elements coupled to said plurality of catalogue elements.

17. The system of claim 15 wherein said text interface is an application programming interface.

18. The system of claim 15 wherein said text interface contains operations for querying said plurality of catalogue elements and said plurality of attributes and attribute elements.

19. The system of claim 15 further comprising a tertiary storage manager coupled to said archive server.

20. The system of claim 19 wherein said tertiary storage manager is a cache manager.

21. An article of manufacture comprising:

a computer usable medium having computer readable program code embodied therein for accessing multimedia data, the computer readable program code in said article of manufacture comprising:

computer readable program code configured to cause a computer to define a catalogue for said multimedia data having a plurality of catalogue elements each of which is associated with a portion of said multimedia data, said plurality of catalogue elements associated with a plurality of keywords of said catalogue, said plurality of keywords identifying said multimedia data, said plurality of keywords being interrelated by one or more of associative, whole-part and inheritance relationships;

computer readable program code configured to cause a computer to specify a search request;

computer readable program code configured to cause a computer to identify a result of said search request that satisfies said search request, said result containing one or more of said plurality of catalogue elements;

computer readable program code configured to cause a computer to retrieve said portion of said multimedia data associated with said one or more of said plurality of catalogue elements;

computer readable program code configured to cause a computer to store in said catalogue said search request; and

computer readable program code configured to cause a computer to store in said catalogue said search result.

22. The article of manufacture of claim 21 further comprises:

computer readable program code configured to cause a computer to specify a second search request;

66

computer readable program code configured to cause a computer to compare said second search request with said search request;

computer readable program code configured to cause a computer to retrieve said search result when said second search request is the same as said search request.

23. The article of manufacture of claim 21 wherein said search request is comprised of one or more elements, said computer readable program code configured to cause a computer to store said search request further comprises:

computer readable program code configured to cause a computer to store said one or more elements; and

computer readable program code configured to cause a computer to store cardinality information for said one or more elements; and

computer readable program code configured to cause a computer to store conjunctivity information for said one or more elements.

24. The article of manufacture of claim 21 wherein said computer readable program code configured to cause a computer to store said search result further comprises:

computer readable program code configured to cause a computer to create a container element; and

computer readable program code configured to cause a computer to create a relationship between said container element and said one or more of said catalogue elements.

25. The article of manufacture of claim 21 wherein said catalogue has a plurality of attribute and attribute elements, said computer readable program code configured to cause a computer to identify further comprises computer readable program code configured to cause a computer to perform one or more query operations on said plurality of attribute and attribute elements to identify said one or more of said catalogue elements.

26. The article of manufacture of claim 21 wherein said computer readable program code configured to cause a computer to identify further comprises:

computer readable program code configured to cause a computer to identify a plurality of type instances using said search request;

computer readable program code configured to cause a computer to identify a plurality of keyword instances related to said plurality of type instances; and

computer readable program code configured to cause a computer to identify said one or more of said catalogue elements related to said keyword instances.

27. The article of manufacture of claim 26 wherein said computer readable program code configured to cause a computer to identify a plurality of type instances further comprises:

computer readable program code configured to cause a computer to identify a set of type instances that meet a set of criteria in said search request;

computer readable program code configured to cause a computer to identify a second set of type instances that includes said set of type instances and type instances that are subtypes of said set of type instances.

28. The article of manufacture of claim 27 wherein said computer readable program code configured to cause a computer to identify a plurality of keyword instances further comprises:

computer readable program code configured to cause a computer to identify a set of keyword instances that are related to said second set of type instances;

5,813,014

**67**

computer readable program code configured to cause a
computer to identify a second set of keyword instances
that include said set of keyword instances and child
keyword instances of said set of keyword instances.

29. The article of manufacture of claim 28 further comprises:

computer readable program code configured to cause a
computer to identify a plurality of keyword instances
based on said search request;

computer readable program code configured to cause a
computer to identify said one or more of said catalogue
elements related to said keyword instances.

30. The article of manufacture of claim 21 wherein said
computer readable program code configured to cause a
computer to identify further comprises:

computer readable program code configured to cause a
computer to identify a plurality of person instances
using said search request;

computer readable program code configured to cause a
computer to identify a plurality of container elements
related to said plurality of person instances; and

computer readable program code configured to cause a
computer to identify a plurality of catalogue elements
related to said plurality of container element instances.

31. The article of manufacture of claim 30 further comprises:

computer readable program code configured to cause a
computer to identify a plurality of keywords associated
with one of said plurality of catalogue elements;

computer readable program code configured to cause a
computer to examine said plurality of keywords to
determine whether said one of said plurality of catalogue elements satisfies content criteria specified in
said search request; and

computer readable program code configured to cause a
computer to include said one of said plurality of
catalogue elements in a set of catalogue elements when
said content criteria is satisfied.

32. The article of manufacture of claim 30 wherein said
computer readable program code configured to cause a
computer to identify a plurality of person instances further
comprises:

**68**

computer readable program code configured to cause a
computer to identify a plurality of person information
instances using said search request; and

computer readable program code configured to cause a
computer to identify a plurality of person instances
related to said plurality of person information
instances.

33. The article of manufacture of claim 21 wherein said
computer readable program code configured to cause a
computer to retrieve further comprises:

computer readable program code configured to cause a
computer to associate a plurality of IDs to said portion
of said multimedia data;

computer readable program code configured to cause a
computer to create a pointers for each of said plurality
of IDs, said physical storage pointer pointing to a
location in which said portion of said multimedia data
is stored;

computer readable program code configured to cause a
computer to retrieve said plurality of IDs;

computer readable program code configured to cause a
computer to retrieve said portion of said multimedia
data from storage using said pointers.

34. The article of manufacture of claim 33 wherein said
computer readable program code configured to cause a
computer to retrieve further comprises:

computer readable program code configured to cause a
computer to search cache for said portion of said
multimedia data;

computer readable program code configured to cause a
computer to retrieve said portion of multimedia data
into said cache from permanent storage, if said portion
of multimedia data is resident on permanent storage
and is not found in said cache.

* * * * *