1  Douglas Q. Hahn, State Bar No. 257559
   dhahn@sycr.com
2  STRADLING YOCCA CARLSON & RAUTH
   660 Newport Center Drive, Suite 1600
3  Newport Beach, CA 92660-6422
   Tel: 949-725-4000
4
5  Victor G. Hardy (admitted *pro hac vice*)
   vhardy@dpelaw.com
6  William B. Parrish (admitted *pro hac vice*)
   bparrish@dpelaw.com
7  Nicole E. Glauser (admitted *pro hac vice*)
   nglauser@dpelaw.com
8  James W. Coutu (admitted *pro hac vice*)
   jcoutu@dpelaw.com
9  DINOVO PRICE ELLWANGER & HARDY LLP
   7000 North MoPac Expressway, Suite 350
10 Austin, TX 78731
   Tel: 512-539-2626

11 Attorneys for Plaintiff
   Preservation Technologies LLC
12

13                    **UNITED STATES DISTRICT COURT**

14                    **CENTRAL DISTRICT OF CALIFORNIA**

15                              **SOUTHERN DIVISION**

| | |
|---|---|
| 16  PRESERVATION TECHNOLOGIES LLC, | CASE NO. SACV11-01860 DOC |
| 17 | |
| 18         Plaintiff, | **PLAINTIFF PRESERVATION TECHNOLOGIES LLC'S PARTIAL OBJECTION TO DISCOVERY MASTER EPORT AND RULING NO. 13** |
| 19         vs. | |
| 20  NETFLIX, INC., et al., | |
| 21         Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 2

II. ARGUMENT ....................................................................................................... 3

    A. Preservation Was Diligent in Seeking to Amend its Infringement Contentions as Proposed in Exhibits 2, 11, 14, and 17 for Good Cause Based on Newly Discovered Infringement Evidence. ............................................................................................... 3

    B. DISH Will Suffer No Unfair Prejudice if Preservation Is Permitted to Amend its Infringement Contentions as Proposed in Exhibits 2, 11, 14, and 17. ............................................................. 8

III. CONCLUSION .................................................................................................. 10

On October 7, 2013, Plaintiff Preservation Technologies, LLC ("Preservation") submitted to the Discovery Master a Motion to Amend its Disclosure of Asserted Claims and Infringement Contentions.[1] On November 27, 2013, the Discovery Master issued its Report and Ruling on Plaintiff's Motion (No. 13) ("Order No. 13"), granting in part and denying in part Preservation's Motion. Preservation respectfully submits this partial objection to Order No. 13, which has not yet been entered by the Court.[2]

## I. INTRODUCTION

This partial objection to Order No. 13 concerns only one issue: whether the Discovery Master erred in refusing to allow Preservation to amend its infringement contentions to include allegations that DISH's whole-home DVR system (the "Joey/Hopper system") infringes claims of the United States Patent Nos. 5,813,014 (the "'014 patent"); 5,832,499 (the "'499 patent"); 6,092,080 (the "'080 patent"); and 6,353,831 (the "'831 patent") (collectively, the "patents-at-issue"), as set forth in Exhibits 2, 11, 14, and 17 to Preservation's Motion.[3] It did.[4]

---

[1] "Motion" or "Mot." refers to Preservation's Motion to Amend submitted to the Discovery Referee on October 7, 2013; "Opposition" or "Opp." refers to Defendant DISH Network Corp.'s ("DISH's) Opposition to Preservation's Motion submitted to the Discovery Referee on October 14, 2013; "Reply" refers to the Reply in Support of Preservation's Motion submitted to the Discovery Referee on October 18, 2013; and "Sur-Reply" refers to DISH's sur-reply to Preservation's Motion submitted to the Discovery Referee on October 29, 2013. All other capitalized terms have the meaning ascribed to them in Preservation's Motion and Reply, unless otherwise defined herein.

[2] Preservation's objection is based on and cites to various pleadings and exhibits that the parties served on the Discovery Master relating to Preservation's Motion, including exhibits that were served under seal pursuant to the Protective Order in this case. If the Court does not have a copy of the entire record, Preservation will work with DISH to jointly provide the Court with copies of the pleadings and exhibits.

[3] In an effort to narrow the issues before this Court, Preservation is not objecting to the portion of the Discovery Master's ruling denying Preservation's proposed amendments in Exhibit 19 (to the extent Exhibit 19 relates accusations that the Joey/Hopper system infringes U.S. Patent 5,832,495 (the "'495 patent")).

[4] Pursuant to Federal Rule of Civil Procedure 54(f), this Court reviews factual findings and conclusions of law by the Discovery Master de novo.

As set forth in Preservation's briefing and exhibits in support of its Motion, Preservation demonstrated good cause to amend its infringement contentions to accuse the Joey/Hopper system of infringing the patents-at-issue. Furthermore, there is no prejudice to DISH by allowing the proposed amendments denied by the Discovery Master or any prejudice that does exists is of DISH's own making and directly results from DISH's deliberate failure to comply with court-ordered discovery deadlines. Therefore, for all the reasons set forth in Preservation's briefing and exhibits on its Motion and below, the Discovery Master's decision should be reversed and Preservation's proposed amendments in Exhibits 2, 11, 14, and 17 should be allowed.

## II. ARGUMENT

### A. Preservation Was Diligent in Seeking to Amend its Infringement Contentions as Proposed in Exhibits 2, 11, 14, and 17 for Good Cause Based on Newly Discovered Infringement Evidence.

Paragraph 8 of the Case Management and Scheduling Order (the "CM Order") expressly permits Preservation to amend its infringement contentions— *i.e.*, to amend **both** its asserted claims **and** it is underlying infringement theories— for good cause. *See* Dkt. Nos. 165 & 156-1 at ¶ 8(b) ("Preservation's claim election is subject to good cause only."); *id.* at ¶ 8(f) ("Amendment of the Infringement Contentions . . . may be made only by order of the Court upon timely showing of good cause."). Preservation's showing of good cause falls squarely within one of the express examples specifically provided by paragraph 8(f) of the CM Order—*i.e.*, example (iii) pertaining to the "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions." Dkt. 156-1 at ¶ 8(f).

As DISH and the Discovery Master acknowledged, the patents-at-issue relate to non-public, backend computerized systems, software, and/or components.

1  *See* Mot. at 1, 5 & Exs. C, D, E, & 2, 11, 14, and 17; Reply at 10 & Ex. Q; Order
2  No. 13 at 9 & n.4. In Preservation's briefing and exhibits in support of its Motion,
3  Preservation demonstrated that it could not ascertain that the Joey/Hopper system
4  infringed the patents-at-issue based upon publically available information. Reply
5  at 10-11 & n.7, 14-15, & Ex. Q. Instead, Preservation first discovered that the
6  Joey/Hopper system infringes the patents-at-issue based on the non-public source
7  code and other technical discovery produced by DISH after Preservation had
8  served its original infringement contentions. *See id.*
9        Preservation diligently pursued discovery of this nonpublic information,
10 including source code, from DISH relating to the Joey/Hopper system (including,
11 for example, Sling Guide Enterprise code) and diligently reviewed this discovery
12 as DISH belatedly produced it as late as the end of September 2013. *See, e.g.*
13 Reply at 4-7; Order No. 13 at 10. The chronology of when source code was
14 requested, produced, and reviewed is set forth in detail in Preservation's Motion
15 and Reply, as well as Order No. 9. *See* Mot. at 3, 5-6, 8-10 & Exs. 2, 11, 14, and
16 17, C, E, & K; Reply at 4-9 & Exs. L, M, N, & O & Glauser 2d Decl. at ¶¶ 12-14.
17       The Discovery Master concluded that the extensive citations in Exhibits 2,
18 11, 14, and 17 reflected that Preservation needed the nonpublic technical discovery
19 to amend its contentions as proposed. *See* Order No. 13 at 11. The Discovery
20 Master further agreed that DISH's rolling production of source code through late-
21 September 2013 was inconsistent with this Court's and the Discovery Master's
22 date certain deadlines for production. *Id.* at 10-11. Indeed, the Discovery Master
23 specifically stated that it "[was] sympathetic to the fact that [Preservation] was
24 placed in a difficult position by DISH's rolling production of technical
25 information." *Id.* at 13. Nevertheless, the Discovery Master ultimately denied
26 Preservation's amendments as proposed in Exhibits 2, 11, 14, and 17.
27
28

The Discovery Master's decision that Preservation failed to demonstrate good cause for the proposed amendments rests exclusively on its conclusion that Preservation could have given DISH "some notice" of infringement of the patents-at-issue based upon non-confidential information because Preservation had previously submitted claim charts accusing the Joey/Hopper of infringing U.S. Patent Nos. 6,199,060 (the "'060 patent") and 6,477,537 (the "'537 patent) based on publically available information:

> The Discovery Master does not believe that PTL has acted with the requisite diligence, however, with respect to the amended claim charts for which the first time assert patents against VOD over STB. While the Discovery Master is sympathetic to the fact that PTL was placed in a difficult position by DISH's rolling production of technical information, that does not excuse PTL's failure to provide DISH with some notice **based on non-confidential information** that certain patents were being asserted against VOD over STB—*after all, it was able to provide such notice with respect to the '060 patent and '537 patents*.

*Id.* at 13. But the Discovery Master's reliance on Preservation's submission of claim charts accusing the Joey/Hopper system of infringing the '060 and '537 patents to assert that Preservation had the ability to give earlier notice of infringement of the patents-at-issue (*i.e.*, other patents) is misplaced.

As Preservation argued in its briefing in support of its Motion, the patent in suits including the '014, '499, '080, '831 and '495 patents have numerous elements directed solely to back end computerized systems that are not publically observable. *See* Reply at 10-11 & n. 7. The elements of the asserted claims of the '060 and '537 patents have substantially different elements than the asserted claims of the '014, '499, '080, '831 and '495 patents. Notably, the '014 patent (claim 15 and dependant claims 16 and 17), the '080 patent (claim 2 and dependant claims 3, 4, 7, 15), and the '499 patent (claims 3 and dependants 4 and 8) each recite or claim (a) a first media interface; (b) second media interface; and (c) an archive server. *See* Reply at 10-11 & n.7; *see also* Dkt. 191 Exs. A, B, C. Similarly, the

'831 patent (claim 2 and dependant claim 4) recites (a) a first means for interfacing; and (b) a second means for interfacing with an archive server. *See* Dkt. 191 Ex. D. None of these claim limitations are present in the claims asserted against Joey Hopper set top boxes in the original '060 and '537 claim charts based upon public information. *See* Dkt. 191 Ex. F & I.

Short inspection of Exhibits 2, 11, 14, and 17 shows that each and every one of these elements are met by reference to very specific computerized systems expressed in source code for which it would have been impossible for Preservation to ascertain based upon publically available information. *See* Mot. Ex. 2 at 54, 64, 76; Ex. 11 at 84, 91, 99; Ex. 14 at 70, 77, 85; and Ex. 17 at 47, 62. Neither Dish nor Order No. 9 identifies any publically available information in Preservation's original '060 and '537 charts or otherwise that is sufficient to show the presence of these elements in the Joey/Hopper system, nor could any such identification be made.

The first and second media interface claim elements of the '014, '499, '080, and '831 patents are substantially different from the "API protocol means" of claim 1 of the '537 patent, consisting of a "command interface" that uses a "means for selecting multimedia," "means for retrieving" and a "means for displaying." *See* Dkt. 191 Ex. I, claim 1. The command interface, among other things, relates to issuing search, retrieval and display commands in response to human actions. Preservation was able to use publically available screen shots of the Joey/Hopper system to reasonably infer the commands of the command interface to assert infringement of the '537 patent. But again, the first and second media interfaces for Joey/Hopper system are not directed to publically observable (or inferable) command features.

Furthermore, like the '537 patent, the '060 patent is directed to a generalized protocol that includes the similar inferable command steps of searching, retrieving,

1  and displaying that would be issued in response to human actions.[5]  *See*, Dkt. 191
2  Ex. F, claim 1.  The same reasons stated concerning publically observable or
3  inferable commands stated above with respect to the '537 patent also apply as to
4  why Preservation could infer the generalized protocol of the '060 patent based
5  upon the publically observable command features and still not have the
6  information necessary for asserting infringement of claims that require a first and
7  second media interface.

8      Finally, none of the originally charted claims accusing the Joey/Hopper of
9  infringement recited an "archive server," and thus none of the publically available
10 evidence in those charts was directed to an archive server.  *See* Mot. at Ex. H; Dkt.
11 191 Exs. F & I.  By contrast, the asserted claims of the '014, '080, '499, and '831
12 patents, require an archive server.     And again, even a cursory review of Exhibits
13 2, 11, 14, and 17 reflect that the "archive server" element is met by reference to
14 very specific computerized systems expressed in source code  for which it would
15 have been impossible for Preservation to ascertain based upon publically available
16 information.

17     Accordingly, given the differences in scope between the claims of the '537
18 and '060 patents and the claims of the '014, '499, '080, '831 and '495 patents,
19 there is simply no basis for the assertion that Preservation could provide notice of
20 infringement of the latter based on publically available information simply because
21 it was able to do so with regard to the former.  In view of the fact that Defendant
22 did not complete its production of source code for the Joey/Hopper system until
23 September 2013,[6] Plaintiff had good cause for serving its infringement contentions

---

[5] The '060 claim is similar to the 537 patent asserted against the Joey/Hopper system.  The "means for selecting" of command interface of the '537 patent roughly corresponds to the "search" claim element of the '060 patent.  The "means for retrieving" element of the '537 patent roughly corresponds to the "retrieval request" element of the '060 patent.  The transmitting step of the '060 patent refers to the transmission the multimedia data and roughly corresponds to the "means for display" element of the '537 patent.

[6] The Sling Guide enterprise server code produced on September 6, 2013 related to critical portions of the Joey/Hopper system, as reflected in Mot. Exs. 2, 11, 14, and 17.

which required that code on October 7, 2013.  See Reply at 4-7; Order No. 13 at 10.

### B. DISH Will Suffer No Unfair Prejudice if Preservation Is Permitted to Amend its Infringement Contentions as Proposed in Exhibits 2, 11, 14, and 17.

The Discovery Master further found that, "even if [Preservation] demonstrated diligence [with regard to the amendments proposed in Exhibits 2, 11,14, and 17], the prejudice to DISH of allowing [Preservation] to assert the claims of five (5) patents against the Joey/Hopper system for the first time just weeks before the close of discovery is substantial."  Order No. 9 at 14.  But this finding ignores the circumstances here and is inconsistent with its finding that any prejudice that may be suffered by DISH by allowing Preservation's other proposed amendments is "insubstantial."  *Id.* at 17.  Because DISH will not suffer any unfair prejudice for the reasons set forth in Preservation's briefing and exhibits in support of its Motion.

First, Preservation asserted the '014, '499, '080, '831 and '495 patents against DISH when it first filed this action in December 2011.  *See* Dkt. 1.  Therefore, Preservation is not seeking to add additional patents in this action. Instead, for all the reasons set forth above, Preservation is merely seeking to accuse the Joey/Hopper system of infringing these previously asserted patents.  Whereas Preservation could not have known that the Joey/Hopper system infringed these patents without discovery of confidential, nonpublic information and source code, DISH is intimately familiar with its own systems and methods.

Second, the same facts that support the Discovery Master's conclusion that DISH will not be unfairly prejudiced regarding other proposed amendments support the conclusion that DISH will be unfairly prejudiced with regarding to the amendments in Exhibits 2, 11, 14, and 17.  As the Discovery Master stated, "[i]n weighing prejudice, one of the factors is the stage of the case and impending

-8-

deadlines set by prior orders of the court." Order No. 9 at 15.  Here, the relevant deadlines imposed by the Court as set forth in Preservation's briefing and the Discovery Master's order reflect that this case is in its infancy (despite the date it was originally filed).  *See* Mot. at 4-6, 9-10, and exhibits and cases cited therein; Reply at 18-19 and exhibits and cases cited therein; Order No. 9 at 15.  More specifically, Preservation filed its Motion and served its amended contentions on October 7, 2013.  By agreement between the parties and Court order, the fact discovery cut-off is December 6, 2013 (more than a month after Preservation filed its Motion and served its amended contentions); the expert discovery cut-off is March 21, 2014 (more than five months after Preservation served its amended contentions); opening *Markman* briefs are due in June 2014 (eight months after Preservation served its amended contentions); the pretrial conference is September 2014 (11 months after Preservation served its amended contentions); and trial is October 2014 (a year after Preservation served its amended contentions).  *See* Dkt. 156-1 at ¶ 16; *see also* Mot. at 4-6, 9; Reply at 18-19.

Furthermore, DISH has taken only two depositions in the case, and neither of those was a Fed. R. Civ. P. 30(b)(6) deposition.  Reply at 18; *see also* Order No. 9 at 15.  As the Discovery Master explained, "[t]he fact that there has not been extensive deposition activity in the case to date certainly means that DISH cannot complaint that allowing the amendments will necessitate re-deposing certain witnesses, which would present a stronger case for prejudice."  Order No. 9 at 16.

Furthermore, DISH merely asserts its prejudice is that Preservation's proposed amendments "have the potentially to substantially impact both the infringement and damages risk landscape and thus significantly impact the entire focus and strategy of DISH's defense near the end of discovery."  Order No. 9 at 17; *see also* Sur-Reply at 12 (quoting Opposition at 12).  Yet, as the Discovery Master concluded:

> DISH's assertion of prejudice lack[s] the requisite level of specificity. As pointed out in [Preservation]'s Reply, courts apply local patent rules upon which ¶ 8 of the [CM Order] is based have found such assertions of prejudice to be insufficient to justify denying a request to amend contentions. *See* Reply at 18 (citing numerous N.D. Cal. cases, including one (*Vasudevan Software, Inc. v. IBM*, 2011 WL 940263 (N.D. Cal. Feb. 11, 2011)) where leave to amend was granted even though the claim construction hearing had already occurred).

Order No. 9 at 17.

Most importantly, any prejudice here is the result of DISH's own making. *See* Mot. 4-6, 9; Reply at 19. DISH chose not to comply with the CM Order and produce all of the source code and technical discovery required by paragraph 8(e) of the CM Order in March 2013. DISH chose not to comply with Discovery Master Order No. 9 and produce all relevant source code by July 12, 2013. DISH chose to produce its source code and related materials in piecemeal fashion, including as recently as late as September 2013. Therefore, as the Discovery Master concluded, "by producing code and other technical information in a rolling fashion and after the deadlines previously imposed by the Court, DISH contributed to the situation." Order No. 9 at 17.

Accordingly, Preservation has satisfied its burden to demonstrate the lack of prejudice.

### III.   CONCLUSION

For the foregoing reasons and as set forth in Preservation's briefing and exhibits in support of its Motion, this Court should reverse the portion of the Discovery Master's order denying Preservation's Motion and grant the Motion with respect to Exhibits 2, 11, 14, and 17.

| | | |
|---|---|---|
| 1 | DATED: December 5, 2013 | DINOVO PRICE ELLWANGER & HARDY LLP |
| 2 | | |
| 3 | | By: */s/ Victor G. Hardy* |
| 4 | | Attorneys for Plaintiff |

-11-

PLAINTIFF'S OBJECTION TO DISCOVERY MASTER REPORT NO. 13

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH